Paul COFFMAN *v.* STATE of Arkansas

CA CR 88-53                                759 S.W.2d 573

Court of Appeals of Arkansas
Division II
Opinion delivered November 9, 1988

46

*Greene Law Office*, by: *Bill Luppen*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant was convicted of DWI, first offense, by a judge sitting without a jury and sentenced to 24 hours in jail, fined $150.00 plus costs, his driver's license was suspended for 90 days, and he was ordered to attend DWI school. On appeal, he contends the trial court erred in denying his motion to suppress since he was unlawfully seized and all evidence obtained as a result of that seizure should have been suppressed.

On August 29, 1987, on instructions from State Police

Headquarters, the Arkansas State Police and the Saline County Sheriff's Office conducted a roadblock for the purpose of checking vehicle and drivers' licenses and headlights and taillights. The safety checks began at approximately 6:00 p.m. and lasted until midnight, or shortly thereafter, at a site chosen by a supervisor who was directing the other officers as to where to set up the roadblock and what to check. There was testimony that police cars were present with blue lights on and that the roadblock was clearly visible.

Officer Roger Bullard, a reserve deputy with the Saline County Sheriff's Office, was instructed by Corporal Halley, a senior trooper, to tell anyone who turned around to avoid the roadblock that they were to go back through. Bullard testified he observed appellant, who was going south on the highway toward the roadblock, pull into a driveway, back out into the highway, and head back north. Bullard said he pulled out behind appellant, put on the blue lights, and stopped him. Appellant stepped out of his vehicle, and Bullard called for a trooper's assistance because appellant appeared too intoxicated to drive back through the roadblock. Bullard testified that, before appellant stopped, he did not observe appellant driving erratically or suspect him of any criminal activity. He stopped appellant only because he was trying to avoid the roadblock.

Officer Howington responded to Bullard's call for assistance. When he arrived at the scene, Howington observed appellant sitting in his vehicle behind the steering wheel. When he began talking to the appellant, Howington detected a strong odor of alcohol coming from the vehicle and from the appellant. Howington asked appellant to step out of the vehicle, and he was given a field sobriety test which he failed. Appellant was then arrested for DWI, transported to the Bryant Police Department, and given a breathalyzer test which registered 0.19%.

Appellant argues that the original stop of his vehicle constituted an unconstitutional seizure because there was no probable cause or reasonable suspicion that he had committed or was about to commit a crime. He also argues that the roadblock was unlawful.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides in part:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

The term "reasonably suspects" is defined in A.R.Cr.P. Rule 2.1 as a "suspicion based on facts or circumstances which of themselves do not give rise to probable cause . . . but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." The Commentary following Rule 2.1 points out that Rules 2 and 3 of our Rules of Criminal Procedure are characteristic of those generated by the decision of the United States Supreme Court in *Terry* v. *Ohio*, 392 U.S. 1 (1968). These rules were discussed at length by the Arkansas Supreme Court in *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284 (1982), *cert. denied*, 459 U.S. 882 (1982), where it was said:

The courts have used various terms to describe how much cause or suspicion is necessary or reasonable in order to stop a person or vehicle. The common thread which runs through the decisions makes it clear that the justification for the investigative stops depend upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity. *U.S.* v. *Cortez*, 449 U.S. 411 (1981); *Michigan* v. *Summers*, 402 U.S. 692, 101 S.Ct. 2587 (1981); *Terry* v. *Ohio*, 392 U.S. 1 (1968).

275 Ark. at 80. *See also Reeves* v. *State*, 20 Ark. App. 17, 722 S.W.2d 880 (1987).

██ Under the authority of the above case decisions and rules of criminal procedure, we do not agree with appellant's contention that the stop of his vehicle was unconstitutional or unlawful. We agree with the appellee that the question is whether the record will support a finding that the police officer could have

"possessed the requisite reasonable suspicion necessary to effectuate a constitutionally permissible investigatory stop." We find that the record will support such a finding. There is evidence from which it could be found that the appellant was approaching a roadblock made clearly visible by the presence of police vehicles with flashing blue lights; that the appellant attempted to avoid the roadblock; and that the trained police officers who were conducting the roadblock could reasonably suspect that one who attempted to avoid this roadblock was trying to hide some type of unlawful activity. Indeed, the Comment to A.R.Cr.P. Rule 2.1 lists a number of factors to be considered in determining whether reasonable suspicion exists and one factor listed is "apparent effort of a person to avoid identification or confrontation by the police."

■ The appellant argues he was not stopped because Officer Bullard had a reasonable suspicion that appellant was engaged in criminal activity but simply because Bullard was told to stop anyone who tried to avoid the roadblock. The standard, however, is not subjective. In *Terry* v. *Ohio*, the Court said "it is imperative that the facts be judged against an objective standard," 392 U.S. at 21, and in determining whether an officer acted reasonably "due weight must be given, not to inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in the light of his experience," id. at 27. Also, the record shows that Officer Bullard's superior officer, a senior trooper, gave Bullard these instructions. In *Jackson* v. *State*, 274 Ark. 317, 624 S.W.2d 437 (1981), the court said that a warrantless arrest is to be evaluated upon the collective information of the police, and in *Tillman, Huggins & Byrd* v. *State*, 275 Ark. 275, 630 S.W.2d 5 (1982), where it was claimed that a vehicle stop was an unlawful arrest and seizure, the court found reasonable suspicion for the stop based upon "objective manifestations" revealed by the evidence, 275 Ark. at 281. That opinion also quoted from the case of *United States* v. *Cortez*, 449 U.S. 411 (1981), as follows:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law

enforcement officers. *Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.* (Emphasis supplied.)

■ To a trained police officer, the fact that a motorist attempted to avoid the roadblock in this case would surely excite a reasonable suspicion that, at the very least, the motorist was drunk, driving a stolen vehicle, did not have a valid driver's license, or had some car light defect. These violations of the law would meet A.R.Cr.P. Rule 3.1 requirements since they involve appropriation of property or danger of injury to other motorists. Therefore, we do not agree that the stop of appellant's vehicle was unlawful; and after he was stopped, the appellant's intoxicated condition was apparent and the officers had obvious probable cause to arrest him.

■ Appellant also argues that the roadblock was unlawful and he contends that this would make his arrest unlawful because of the fruit-of-the-poisonous-tree doctrine. First, we simply do not agree that an unlawful roadblock would infect the validity of appellant's arrest under the circumstances in this case. Second, we agree with the appellee that roadblocks are constitutionally permissive if certain criteria are met. *See generally* 4 LaFave *Search and Seizure: A Treatise on the Fourth Amendment* § 10.8 (2nd Ed. 1987 & Supp. 1988). In *Delaware* v. *Prouse*, 440 U.S. 648, 663 (1979), the Court held the random stopping of an automobile invalid but said:

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alterna-

tive. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

Therefore, even if the roadblock issue is relevant, and we do not think it is, the record does not convince us that the trial court erred in sustaining the validity of appellant's stop and arrest in this case.

Affirmed.

COOPER and COULSON, JJ., agree.