Fred SNYDER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 53A04–8809–CR–295.

Court of Appeals of Indiana,
Fourth District.

May 23, 1989.

CHEZEM, Judge.

## Case Summary

Defendant, Snyder, appeals his conviction for Operating a Vehicle While Intoxicated. We affirm.

## Issues

I. Whether a roadblock is an unreasonable seizure which violates the Fourth and Fourteenth Amendments of the United States Constitution when the driver has not consented but was either unable to avoid the roadblock or deemed seized because he came within a reasonable distance of the roadblock.

II. Whether the act of a driver making a turn away from a sobriety roadblock is a specific and articulable fact which would allow a police officer to draw an inference sufficient to form a reasonable suspicion that the driver may be committing a crime allowing the officer to detain the driver without a warrant.

## Facts

On December 12, 1988 sometime right before 1:00 A.M., the Defendant, Snyder, came upon a sobriety roadblock operated by the Indiana State Police. The roadblock had just begun operations when Snyder approached the roadblock and it was operated continuously until 4:00 A.M.—except for a period of one-half hour to forty-five minutes, when the roadblock shut down due to a shortage of manpower, but subsequently resumed. The roadblock was publicized in conformity with *State v. Garcia* (1986), Ind., 500 N.E.2d 158. The area was well lighted by the Perry Township Volunteer Fire Department and the police vehicles had their deck lights blinking on and off. Administrative officers for the Indiana State Police prepared written guidelines for the roadblock which were given to each officer assigned to the roadblock.

The guidelines provided that five (5) vehicles were to be stopped. Once the police were finished with those five (5) drivers, then five (5) more vehicles would be detained.[1] An officer would request the driv-

Daniel Sherman, Deputy Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

---

1. Sergeant Durnil testified that the circumstances required that every automobile be detained instead the first five (5) and then five (5) more as had been originally been planned.

er to produce both license and registration and would observe the driver for signs of intoxication. If the driver appeared to be intoxicated the officer was to divert the driver to a secondary area where field sobriety tests would be administered. If the driver failed the sobriety tests, the driver was given a breathalyzer test. A Blood Alcohol Concentration Score (BAC) in excess of .10% subjected the driver to arrest for Operating a Vehicle While Intoxicated.

Approximately 100 yards from the roadblock Snyder turned around in the road to avoid the roadblock—although Snyder testified that he thought that the roadblock was an accident and that he was trying to avoid a delay. State Trooper Myers left the roadblock and pulled Snyder over. The parties stipulate that, prior to the stop, Snyder committed no traffic violations, nor was he driving erratically. Myers testified that the sole reason he stopped Snyder was that Snyder was apparently trying to avoid the roadblock.[2]

Upon stopping Snyder, Myers observed containers of alcohol in the vehicle and the presence of alcohol on Snyder's breath. Snyder also admitted that he had been drinking that evening. Myers administered field sobriety tests on Snyder, which Snyder did not pass. Subsequently, Snyder was found to have a Blood Alcohol Concentration Score (BAC) of .15%. Snyder was arrested and charged by information with operating a vehicle while intoxicated, a Class A misdemeanor, and operating a vehicle with .10% or more alcohol in his blood.

Snyder, by counsel, filed a motion to suppress the evidence obtained from the arrest on the grounds it had been obtained from an unlawful "stop." The motion was denied by the trial court. Snyder was found guilty of operating a vehicle while intoxicated after a bench trial and was sentenced to 90 days in jail, 60 of which were suspended, and was placed on probation for 12 months, on the condition he commit no further offenses in that time, serve 4 days in jail, 24 days on house

arrest, perform 16 days road crew, pay $150 or complete a treatment program. Also, his license was suspended for 30 days and restricted to driving to and from work and treatment for 180 days.

## Discussion

### I

As a general rule automobile drivers are not shorn of their Fourth and Fourteenth Amendment protections when they leave their homes and enter their automobiles. *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. Police officers may only search an automobile or seize occupants upon obtaining a warrant or upon having probable cause to believe a crime has been committed or is being committed by occupants of the vehicle. *Id.*

An exception exists when the officer has a reasonable suspicion based upon specific and articulable facts, and rational inferences from those facts that the occupants are committing a crime or are about to commit a crime. *Id.; Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In such a case the officer may briefly detain the occupants to conduct a limited "non-invasive" search such as a "pat down" for weapons, a license and registration check, or field sobriety tests.

Another exception exists when the police are operating pursuant to a plan embodying explicit, neutral limitations. *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 and *Delaware v. Prouse, supra.* When stops are made pursuant to a plan that satisfies the *Brown* three prong balancing test, such stops may be made without probable cause or a reasonable suspicion. The test balances the following:

1. the gravity of the public concerns served by the seizure;

2. the degree to which the seizure advances the public interest; and

3. the severity of the interference with individual liberty.

---

**2.** Both Myers and his supervising officer, Sergeant Durnil, testified that it was standard operating procedure to stop any driver attempting to avoid the roadblock. Although this was not a part of the written guidelines for the roadblock.

In *Garcia, supra,* our state supreme court upheld the constitutional validity of police sobriety roadblocks as an enforcement method to combat drunk driving, so long as those roadblocks met the guidelines set forth in that case. Snyder argues *Garcia* is premised on the idea that by their entry into a police roadblock the drivers "consent" to a limited stop. While Justice Pivarnik noted in *Garcia* that many motorists turned around and fled, *Garcia* at 162, rather than enter the roadblock, the decision in that case was not based upon consent. In fact the word "consent" does not appear at all in *Garcia.* Rather, the court upheld the roadblock because it satisfied the requirements of *Brown, Prouse,* and *United States v. Martinez–Fuerte* (1976), 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116. The principal evil sought to be prevented in those cases was unbridled police discretion in which officers could arbitrarily or capriciously decide which vehicles would be detained. *Prouse* 440 U.S. at 661, 662, 99 S.Ct. at 1400, 1401.

■■■ "Consent" is an inappropriate analysis for this type of seizure. Consent to a warrantless search or seizure must be freely and voluntarily given and must not be the product of duress or coercion, express or implied. *United States v. Mendenhall* (1980), 446 U.S. 544, 557–58, 100 S.Ct. 1870, 4878–79, 64 L.Ed.2d 497 *citing Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed. 2d 854. Consent is not like a waiver of legal remedies, where the failure to exercise them constitutes a waiver. The government has the burden of proving that the consent was freely and voluntarily given from the totality of the circumstances. *Mendenhall,* 446 U.S. at 557, 100 S.Ct. at 1878. The failure to protest to a search does not constitute consent, nor, in this case, does the failure to avoid a roadblock mean the driver "consents" to the subsequent detention.

■■■ Consent may, however, affect the "reasonableness" of the seizure—the roadblock. Thus, if a driver may not choose to avoid the roadblock by turning around, the roadblock may become too intrusive and thus become an unreasonable seizure, rendering the entire roadblock invalid. *See Little v. State* (1984), 300 Md. 485, 479 A.2d 903 (Maryland Supreme Court upheld the validity of a state police sobriety roadblock, but emphasized the fact that the roadblocks were very visible and that drivers were free to turn around and avoid the roadblock[3]); *Sitz v. Dept. of State Police* (1988), 170 Mich.App. 433, 429 N.W.2d 180 (Michigan Court of Appeals struck down the use of police sobriety checkpoints due to a lack of proven effectiveness in apprehending drunk drivers or a proven deterrent value and found that the degree of intrusiveness was not decreased when drivers were not alerted to an option to turn around to avoid the roadblock. *Id.* 170 Mich.App. at 436–37, 429 N.W.2d at 184–85); *People v. Scott* (1984), 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1 (Court of Appeals of New York upheld written operating procedures which allowed police officers from the roadblock to follow drivers avoiding the roadblock to observe for traffic violations, thus implying that the act of making a U-turn, standing alone, may not be enough to constitute a reasonable suspicion or that stopping a driver merely because he made a U-turn would make the roadblock an unreasonable seizure. *Scott,* 63 N.Y.2d at 524, 483 N.Y.S. 2d at 651, 473 N.E.2d at 3).

The cases listed above seem to indicate those courts believed such a roadblock would violate the third prong of the *Brown* test (the severity of the interference with individual liberty) and the Fourth and Fourteenth Amendments of the United States Constitution because of their intrusiveness. However this intrusiveness must be weighed against the public interest.

As Justice Pivarnik stated in *State v. Garcia,* "our society has a grave concern in apprehending and deterring drunk drivers and that traditional methods have not ef-

---

**3.** This principle was later reaffirmed by the Maryland Court of Appeals in *Brown v. State*

(1989), 78 Md.App. 513, 553 A.2d 1317.

fectively combatted the problem." *Garcia* at 162. He also noted that the roadblock procedure employed in *Garcia* advanced this public interest by deterring drunk driving. *Id.* The inclusion of a "no U-turn" policy into the procedure further strengthens the degree to which the public interest is advanced. While such a policy does increase the interference with individual liberty, the additional burden is not unreasonable. If the police are permitted to stop drivers without any individualized suspicion while "operating pursuant to a plan with explicit, neutral guidelines," it does not follow that police are only permitted to stop the "timid"—who obediently proceed through the roadblock—but are not permitted to stop the "bold"—those who defy the police roadblock by evading it.

In *People v. Long* (1984), 124 Ill.App. 1030, 80 Ill.Dec. 332, 465 N.E.2d 123, the court determined a driver who came within one hundred (100) yards of the police roadblock was within the area reasonably encompassed by the roadblock. It held that the driver had been "seized" and police were entitled to approach the vehicle and request that the driver produce both license and registration. The court determined a "reasonable distance" must be judged objectively upon the facts and circumstances of each case.

This rule could pose difficulty in some circumstances. The rule does not allow for cases where drivers come within a "reasonable distance" of the roadblock, but the driver's conduct does not arouse a reasonable suspicion. For example, if the driver of an automobile drove within one hundred (100) yards of the roadblock and turned off onto another street, the officer would be entitled to stop the driver even if the driver's home was located on the street. Such an expanded view of "seizure" may render

a roadblock an unreasonable seizure. In addition, if the roadblock were invalid, then the stop made pursuant to the roadblock, even though made outside the roadblock, would likewise be invalid since the stop is essentially an extension of the roadblock.

## II

██ The better rule is that while a driver approaching a roadblock is not "seized" until actually reaching the roadblock, a driver's attempt to avoid the roadblock, by making a turn around, does raise a "specific and articulable fact" which gives rise to a reasonable suspicion on the part of a police officer that the driver may be committing a crime. Such a suspicion entitles the officer to detain the driver of the vehicle something short of a full arrest to further investigate whether or not probable cause exists for a search or arrest of the driver. *Terry v. Ohio, supra.* Such a rule has either tacitly or overtly been approved in six other states.[4]

██ If police officers stationed at roadblocks were not permitted to stop such drivers, the very drivers the police seek to deter could flagrantly avoid the roadblocks and the stops would lose their deterrent value. Trooper Maxwell testified that he had pursued and stopped drivers on numerous occasions who sought to avoid roadblocks and inevitably those drivers had suspended or expired licenses, or some other violation of the law. R. at 63, 64. His experience gave him specific and articulable facts and inferences drawn therefrom to form a reasonable suspicion that Snyder was committing a crime. Such might not always be the case when an officer sees a driver avoid a police roadblock. Likewise, a driver who simply turns off the road before entering the roadblock may not give

4. *See Boches v. State* (1987), Miss., 506 So.2d 254; *Coffman v. State* (1988), 26 Ark.App. 45, 759 S.W.2d 573; *Tims v. State* (1988), 26 Ark. App. 102, 760 S.W.2d 78 (act of defendant running through a roadblock gave police a reasonable suspicion to detain him); *City of Las Cruces v. Betancourt* (1987), 105 N.M. 655, 735 P.2d 1161 (act of defendant in running through a roadblock gave officers a reasonable suspicion to detain him); *Smith v. State* (1987), Ala., 515 So.2d 149; *State v. Golden* (1984), 171 Ga.App. 27, 318 S.E.2d 693 (a "chase car" to pursue drivers who avoided the roadblock was a part of the roadblock proceedure but the court still upheld the validity of the roadblock); and *Green v. State* (1988), Fla.App., 530 So.2d 480 (even though roadblock was illegal, defendant's failure to follow directions of police officer was sufficient to give rise to a reasonable suspicion).

rise to a reasonable suspicion, unless coupled with other articulable facts such as erratic driving or traffic violations. A finding of a reasonable suspicion must be determined on a case by case basis.

The alternative is to tell police officers that in spite of their experience, they may not infer from a driver's attempt to avoid a roadblock that the driver is very likely engaged in the commission of a crime. Such a rule would seem to tell police officers to "ignore reality." In *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, Chief Justice Burger wrote the following:

> The process (of drawing inferences and deductive reasoning) does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same —and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. *Id.* at 418, 101 S.Ct. at 695.

In a similar vein, Judge Mayfield of the Arkansas Court of Appeals wrote the following:

> To a trained police officer, the fact that a motorist attempted to avoid the roadblock in this case would surely excite a reasonable suspicion that, at the very least, the motorist was drunk, driving a stolen vehicle, did not have a valid driver's license, or had some car light defect. These violations of the law would meet A.R.Cr.P. Rule 3.1 requirements since they involve appropriation of property or danger of injury to other motorists. Therefore, we do not agree that the stop of appellant's vehicle was unlawful; and after he was stopped, the appellant's intoxicated condition was apparent and the officers had obvious probable cause to arrest him. *Coffman v. State* (1988), 26 Ark.App. 45, 47–48, 759 S.W.2d 573, 575–76.

A rule prohibiting police officers from pursuing drivers who evade roadblocks is unnecessary so long as the officer, by virtue of experience and training, has reasonable and articulable facts upon which his suspicion is based—not mere hunches or speculation. Such a limitation prevents arbitrary or capricious stops, which is the evil sought to be prevented in *Garcia.*

We affirm the trial court's denial of Snyder's Motion to Suppress and the trial court's overruling his objections to the admission of evidence obtained from his being stopped near the roadblock.

NEAL, J., concurs.

CONOVER, P.J., dissents with separate opinion.

CONOVER, Presiding Judge, dissenting.

I respectfully dissent. Although roadblocks to check for drunk drivers are legal in Indiana, the mere fact a driver makes a U-turn 100 yards from a roadblock does not give rise to a "reasonable" suspicion the driver is operating that vehicle while under the influence of intoxicating liquor so as to warrant a police officer stopping that vehicle for further investigation, in my opinion. Suspicious activity perhaps, but "reasonably" suspicious, no. Something more must appear, such as weaving from lane to lane or other erratic driving, before *Terry's* "reasonable suspicion" can legally arise warranting an investigatory stop, as is the requirement in the state of New York, cf. *People v. Scott* (1984), 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1. See also, the *Little* and *Sitz* cases from Maryland and Michigan, respectively, cited in the majority opinion.

The difference between the facts in *Terry* and the facts in this case are readily apparent. There, the police officer watched the would-be robbers walk to and fro in front of their proposed target 8 or 9 times, each time peering in the window, saw them talk to an accomplice who then left, and other suspicious activity for approximately 20 minutes before he detained them and searched for weapons. Here, the driver merely made a U-turn near a road-

block, without more. No erratic driving—nothing. That is a far cry from the facts in *Terry*. Further, Snyder's U-turn violated no law under the facts here presented. U-turns are illegal only on curves or near the crest of a grade where they cannot be seen by drivers of vehicles approaching within 750 feet, cf. IND.CODE 9–4–1–76. Thus, the particularized caution in *Terry* is doubly appropriate here:

> [I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the fact in light of his experience.

*Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

In this state, investigatory stops are not permitted based merely upon an officer's suspicion. In *State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874, our Supreme Court sustained the trial court's granting of a motion to suppress evidence where his only reason for the investigative stop was the police officer's desire to check the vehicle to see if its occupants were juveniles out after curfew. This desire was not sufficient to justify the stop. *Smithers*, 256 Ind. at 517, 269 N.E.2d at 877, citing *Terry*, *supra*. Facts sufficient to justify a stop were found by our Supreme Court in *Broadus v. State* (1986), Ind., 487 N.E.2d 1298. There the police (1) had specific information a robbery had been committed, (2) had descriptions of the car and occupants, and (3) another officer had seen the persons and car matching the descriptions.

While the mere fact a U-turn is made at a point near a roadblock may give rise to a suspicion on the part of an experienced police officer the driver may be driving drunk, that mere fact without more does not justify classifying such suspicion as *Terry*-required "reasonable." U-turns are also frequently made for perfectly innocent reasons. They are commonly made by drivers who leave their house keys at their offices, missed a turn at an intersection, have absentmindedly left their wives at a gas station, or to avoid congested traffic at the scene of an accident, to name but a few. To say a U-turn in and of itself gives rise to a "reasonable suspicion" the driver is committing the crime of drunken driving is totally unwarranted, in my opinion.

I am aware of our Supreme Court's recent decision in *State v. Garcia* (1986), Ind., 500 N.E.2d 158, where, over the dissents of Justices DeBruler and Shepard, three members of our Supreme Court found a roadblock as conducted there, not unconstitutional. There the court noted in passing a person could avoid the roadblock by turning away before reaching it. I am equally aware I am bound by our Supreme Court's majority decision in spite of my personal agreement with the dissenting opinions of Justices DeBruler and Shepard, but I note with particularity for our purposes Justice DeBruler's comment in his dissenting opinion in *Garcia:*

> [I]t is the time-honored requirement that there be an individualized, articulable suspicion of criminal intent or criminal conduct of a person, whether that person stands alone or within a group, which strikes the correct balance between the rights of citizens or groups of citizens and their government's interest in exercising the power to seize.

*Garcia*, 500 N.E.2d 164–165.

This case, of course, differs significantly from *Garcia*. Here it is not the roadblock itself which is at issue, but whether Snyder's action in turning from the roadblock raises a reasonable suspicion of criminal activity sufficient to warrant further investigation. The majority's deference to the police officer in this case is not to any "specific reasonable inferences ... [the police officer] ... is entitled to draw from the facts in light of his experience." *Terry*, *supra*. It gives undue weight to what can be characterized only as the police officer's "hunch," ... "his inchoate and unparticularized suspicion." *Terry*, *supra*.

If we are going to permit stops on no more than a police officer's hunch, we should forthrightly say a private citizen may not invoke the Fourth Amendment's protection whenever he drives an automobile because the danger to the public from drunk drivers transcends private constitu-

tional rights. I find such an unqualified statement sobering and unwarranted to say the least. I would state to the contrary. We must do more than hum the Fourth Amendment's tune, we must loudly sing its lyrics at every available opportunity, if it is to survive in any meaningful form.

For those reasons, I would reverse.