**Albert Lawrence MURPHY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–90–00133–CR.**

Court of Appeals of Texas, Tyler.

Sept. 30, 1992.

Rehearing Overruled April 21, 1993.

Barbara L. Law, Huntsville, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

ONION, Justice (Retired).*

This is an appeal from a conviction for driving a motor vehicle in a public place while intoxicated. Appellant waived trial by jury and entered a plea of not guilty before the court. The trial court found the Appel-

---

* The panel before whom this cause was submitted consisted of John F. Onion, Jr., Presiding Judge (Retired), Court of Criminal Appeals, Stephen F. Preslar, Chief Justice (Retired), El Paso Court of Appeals, and Raleigh Brown, Justice (Retired), Eastland Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

lant guilty and assessed his punishment at confinement in the county jail for 100 days and a fine of $100.00.

Appellant advances two points of error. Initially, Appellant contends that the "trial court erred in denying appellant's motion to suppress evidence obtained as a result of an unreasonable seizure in violation of the 4th Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution." In his second point of error, Appellant repeats his first point of error and then adds "by the manner in which the seizure was conducted."

■ Clearly, by combining more than one contention in a single point of error, an appellant risks rejection on the ground that nothing will be presented for review. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Cr. App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Thomas v. State*, 723 S.W.2d 696, 697 n. 2 (Tex.Cr. App.1986); *see also, Adkins v. State*, 764 S.W.2d 782, 785 (Tex.Cr.App.1988). A claim of cumulative error alleging violation of both the federal and state constitutions is a multifarious point of error. *Stoker v. State*, 788 S.W.2d 1, 18 n. 14 (Tex.Cr.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

> [A]ttorneys, when briefing constitutional questions, should carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground.

*McCambridge v. State*, 712 S.W.2d 499, 501–02 n. 9 (Tex.Cr.App.1986). The failure of an appellant to separate federal and state issues into separate grounds allows the point of error raising constitutional challenges to be overruled as multifarious. *Green v. State*, 736 S.W.2d 218, 220 (Tex.App.—Corpus Christi 1987, no pet.). Claims asserting violations of specific provisions of the Texas Constitution but which provides neither argument nor authority in support of the pro-

tection afforded by the state constitution are inadequate. They will not be addressed. *Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex.Cr.App.1991); *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex.Cr.App.1990). Nothing in *Heitman* changes this caselaw in this regard. *Heitman v. State*, 815 S.W.2d 681, 690 n. 33 (Tex.Cr.App.1991).

Both of Appellant's points of error are multifarious and could be overruled on this basis. *Green*, 736 S.W.2d at 220. We will consider the federal constitutional question presented, but will not address the state constitutional question, as Appellant failed to make a sufficient distinction between the federal and state issues or to provide argument or authority in support of the specific protection afforded by the state constitution. *Morehead*, 807 S.W.2d at 579 n. 1. Merely citing "Article I, Section 9 of the Texas Constitution" is not sufficient. *See* Tex.R.App. P.Ann. 74(f) (Vernon Pamph.1992).

■ In addition, the entire statements of fact from the suppression hearing is not in the record before this Court. The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal. Tex.R.App.P. 50(d) (Vernon Pamph.1992). It appears that a portion of the court reporter's notes or a transcription thereof has been lost or misplaced. The parties have agreed that the remaining statement of facts that are available will constitute the statement of facts for the purposes of appeal. *See* Tex.R.App.P. 50(b), (c) and (e) (Vernon Pamph.1992).[1]

At the conclusion of the suppression hearing, the trial court found that the roadblock in question was "a driver's license check set up," that it did not have "any problem with the reasonableness" or "the stop," and overruled the motion to suppress evidence arising out of any arrest, search, and seizure.

Officer John Robert Perdue,[2] Jr. of the Texas Highway Patrol testified at the sup-

---

1. Rule 50 of the Texas Rules of Appellate Procedure does not provide for the approval of the trial court to an agreed statement of facts on appeal. *See* Tex.Code Crim.Proc Ann. art. 40.09(14) (Vernon 1979) (now repealed), which did provide for such approval. The correctness of a trial court's ruling may now be reviewed on appeal by an agreed statement of facts by the parties only, which may not contain all the evidence upon which the trial court based its ruling.

2. The name is spelled "Pardue" in some parts of the appellate record.

pression hearing, that on the night of July 8, 1989, he was on routine patrol south of Tyler. Perdue heard over the police radio about the checkpoint or roadblock near the intersection of Farm to Market Road 756 and Farm to Market Road 346 in Smith County. He proceeded to the roadblock arriving about 9:45 or 10:00 p.m. and was in the area about one hour before leaving. Perdue, in uniform, assisted approximately eight other officers including other state troopers, deputy sheriffs, and a deputy constable at the roadblock. Perdue did not know who had planned the operation, but stated that the oncoming traffic from either direction was being stopped. According to Perdue, there were five police vehicles with their lights on, including, he believed, the emergency flashers on some of the police vehicles. Both Trooper Perdue and Deputy Constable Pace testified that the checkpoint was a driver's license stop, but added that it was also a safety check. Perdue noted that in addition to checking driver's licenses, the officers were checking headlights, the high beam indicator, taillights and tires on the passing vehicles. The evidence shows that the location of the roadblock had been previously used by the officers as a checkpoint.

Officer Perdue testified that about 10:20 p.m. on July 8, 1989, he observed a black and silver Chevrolet pickup truck stop in the roadway some thirty (30) feet short of the roadblock. Perdue became suspicious of the pickup's action. It was dark and Perdue was concerned for his safety. He called to the other officers and flashlights were directed towards the cab of the pickup truck. Perdue saw three occupants of the truck in the front seat. The taller, older man, later identified as Appellant, was seated in the center. The other two were young male teenagers; one of whom was behind the wheel. The young driver crawled over the Appellant and the Appellant moved into the driver's position. The truck then moved forward and stopped at Perdue's direction. As Perdue approached the truck, Appellant lowered the driver's window. Officer Perdue asked for Appellant's driver's license, which Appellant could not find at that time. Perdue leaned into the truck and determined that the age of the former driver was fourteen years of age. At this point, Officer Perdue concluded that Appellant was very intoxicated. Appellant smelled of alcohol, his eyes were watery and his speech was slurred. He was arrested for driving while intoxicated.

Ronnie Stewart testified as a defense witness at the suppression hearing. He related that earlier in the day on July 8, 1989, he had helped wash Appellant's truck. Stewart explained that "they" planned to go to a field meeting that night, a barbecue party of motorcycle organizations. Stewart acknowledged that he was an unlicensed driver, and that Appellant knew this when he permitted Stewart to drive Appellant's truck that night. As they approached the lights of what appeared to be a roadblock, Appellant told Stewart to switch places with him. As Appellant drove forward, an officer directed him to the side of the road.

Appellant testified that on the occasion of his arrest he was with the young brothers of his girlfriend. They were on their way to a field meeting of motorcycle organizations. Appellant admitted that he had allowed the unlicensed, fourteen year old Ronnie Stewart to drive his truck because he was teaching Ronnie how to drive. As they approached the roadblock, Appellant instructed Ronnie to trade places with him. Appellant then drove the truck forward and was instructed by the officer to pull over to the side of the road. Appellant acknowledged that he had consumed alcohol that day. Appellant stated that later when he arrived at the jail, he learned that he had been arrested for driving while intoxicated.[3]

In his argument, Appellant calls attention to TEX.REV.CIV.STAT.ANN. art. 6687b, § 13 (Vernon 1977),[4] and relies upon *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985), for the proposition that where a driver's license checkpoint is not the sole reason for the

---

3. Appellant also knew that he had outstanding warrants for "speeding" and "failure to appear."

4. Article 6687b, section 13 provides in part:

Any peace officer may stop and detain any motor vehicle for the purpose of determining whether such person has a driver's license as required by this Section.

detention, any broader basis for detention is not authorized by the state statute and cannot be upheld. *Meeks* made clear that *under state law,* a fixed general, all-purpose investigatory stop of motorists is not permissible under article 6687b, section 13. The state statute may not be used as a "fishing expedition" and as a subterfuge for a general investigatory sweep of motorists in the area. *Webb v. State,* 739 S.W.2d 802, 812 (Tex.Cr. App.1987). *Meeks* did not, however, resolve the issue of whether the Texas scheme for driver's license checks meets the muster of the fourth amendment. *Id.*

■ Appellant argues that the instant roadblock was more than a driver's license checkpoint; that it was a "safety check" roadblock as well.[5] Any argument by Appellant that the roadblock was invalid under state law is not within the scope of Appellant's points of error concerning federal constitutional violations.[6] Further, as a basis

for its ruling on a motion to suppress evidence, a trial court may choose to believe or disbelieve any or all of any witness's testimony, *Taylor v. State,* 604 S.W.2d 175, 177 (Tex,Cr.App.1980), and an appellate court is not at liberty to disturb any finding which is supported by the record. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Cr.App.1980); *see also, Johnson v. State,* 803 S.W.2d 272, 287 (Tex. Cr.App.1990); *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Cr.App.1990); *Valencia v. State,* 820 S.W.2d 397, 399 (Tex.App.–Houston [14th Dist.] 1991, pet ref'd). The trial court in the instant case found that the roadblock was "a driver's license check set up." It did not find that a "safety check" was also involved and no request for such a finding was made. The record supports the finding actually made by the trial court.

Appellant argues, nevertheless, that a "combination" stop as in *Meeks* violates fourth amendment protections, citing *Webb v.*

5. Appellant abandoned at the trial court level any claim that the roadblock in question was a sobriety checkpoint, and does not attempt to resurrect that claim on appeal. The Officers involved were not members of any driving while intoxicated task force, there were no driving while intoxicated problems in the area of the roadblock, and the location of the roadblock was not near any bar or restaurant. The Officers testified that they were unaware of any motorcycle organizations field meeting until after the roadblock had been established. They learned of the meeting only from passing motorists.

6. As to a claimed violation of state law, where a driver's license check was not the sole reason for the defendant's detention but also involved a stop to check evidence of financial responsibility, *see State v. Sanchez,* 800 S.W.2d 292, 294 (Tex. App.—Corpus Christi 1990, pet. granted). There, the court wrote:

On the other hand, appellee contends that since a driver's license check was not the *sole* reason for his detention, his detention is illegal under *Meeks v. State,* 692 S.W.2d 504 (Tex.Cr. App.1985). In *Meeks,* officers established a roadblock for the purpose of "enforcing all the laws." In particular, the officers checked for driver's licenses, equipment, overweight vehicles, fugitives, stolen vehicles, sobriety, controlled substances, game violations, and illegal immigrants. The State sought to justify the roadblock under Tex.Rev.Civ.Stat.Ann. art. 6687b, § 13 which states, in pertinent part, that 'any peace officer may stop and detain any motor vehicle operator for the purpose of determining whether such person has a driver's license as required by this section.' Using an

analysis akin to a pretext theory, the court found that article 6687b did not justify the initial stop of *Meek's* vehicle. The court stated that article 6687b, § 13 does not authorize a detention unless the license check was the *sole* reason for the stop. That a stopped driver was first asked for his license will not validate the stop under the statute if it is clear the driver's license check was not the reason for the detention. By so interpreting article 6687b, the *Meeks* Court resolved the legality of the checkpoint on a statutory basis.

Since *Meeks'* 1977 stop, Texas law has changed. Beginning January 1, 1982, Texas law has required every operator, as a condition of driving, to furnish, *upon request,* evidence of financial responsibility to law enforcement officers. *Meeks* must be limited to its factual setting, i.e., the facts showed that the officers were stopping vehicles for what amounted to a 'fishing expedition.' Given the factual and legal distinctions, *Meeks* does not control the present case.

Article 6701h does not explicitly authorize or prohibit the stop of a vehicle to determine compliance with the financial responsibility requirement. It would make no sense to now hold that a driver could be stopped for a license check but that the officer could not validly request proof of financial responsibility at the same time. Since neither article 6687b, nor article 6701h, nor any other statute prohibits an officer who has stopped a vehicle for a license check from requesting proof of financial responsibility, we find that Texas *statutes* do not, as such, prohibit an insurance check in combination with a lawful license check.

*State,* 739 S.W.2d at 812. We would tend to agree, but the roadblock in question was not such a "combination" stop. Although the Supreme Court of the United States has not yet upheld the constitutionality of roadblock stops for the purpose of checking licenses and registrations, the dictum in *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), suggests the constitutionality of such roadblocks. *See Galberth v. United States,* 590 A.2d 990, 1000 (D.C.App.1991).[7] The lower federal and state courts have generally upheld such roadblocks. *Id.* at 1001 (and cases there cited). *Higbie v. State,* 780 S.W.2d 228, 236–37 (Tex. Cr.App.1989), *overruled on other grounds, King v. State,* 800 S.W.2d 528, 529 (Tex.Cr. App.1990), noted that a third area of permissible suspicionless search and seizures is roadblocks for the purpose of checking driver's licenses and vehicle registration.

License and registration checkpoints appear to meet all the criteria outlined in *Camara,* 387 U.S. at 537, 87 S.Ct. at 1735 [*Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727[, 18 L.Ed.2d 930] (1967)]. The Court has noted that suspicionless stops to check driver's licenses are widely used by state law enforcement agencies. *See Martinez–Fuerte,* 428 U.S. at 561 n. 14, 96 S.Ct. at 3084 n. 14 [*United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074[, 49 L.Ed.2d 1116] (1976)]. *Higbie,* 780 S.W.2d at 237. *See generally,* 4 WAYNE LAFAVE, *Search & Seizure: A Treatise on the Fourth Amendment,* § 10.8(a) (2nd ed. 1987) (Driver's license and vehicle registration checks), and (b) (Safety inspection of vehicle equipment). We find no merit in Appellant's contention that the instant roadblock violated the fourth amendment in that the roadblock's purpose was too broadly based.

■ In his second point of error, Appellant, relying upon *Webb,* 739 S.W.2d at 807, contends that the balancing test for suspicionless stops under the fourth amendment involve three main considerations, including "2) discretion exercised by officers in the field." Appellant complains that in the instant case the officers in the field had unfettered discretion at the roadblock because they did not appear to comply with any neutral guidelines. He argues suspicionless stops must be non-arbitrary systematic stops and that the officers conducting the operation must not enjoy "unbridled discretion" in deciding who to stop or what procedures are to be followed without prior plans and decisions by administrative personnel or "higher-ups," rather than by officers in the field. *Webb,* 739 S.W.2d at 808.

■ As we have seen, the Legislature has authorized any peace officer to stop and detain any motorist to determine whether such person has a driver's license. *See* TEX.REV. CIV.STAT.ANN. art. 6687b, § 13. While *Prouse* held that a suspicionless roving or random stop of a motorist for that purpose was violative of the fourth and fourteenth amendments, the Supreme Court noted that the holding did not preclude the States from developing methods for spot checks that involved less intrusion or that do not involve the unconstrained exercise of discretion. The Court suggested that "[Q]uestioning of all oncoming traffic at roadblock stops is one possible alternative." *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401.

In the instant case, there was legislative authorization, a compliance with the alternative suggested in *Prouse* of *all* oncoming traffic from either direction for questioning curtailing any discretion on the part of the field officers in this regard, a showing that the location in question had been previously used on a number of occasions as a traffic roadblock, and a finding by the trial court that that instant roadblock was "a driver's license check set-up" which was "reasonable." As earlier observed, all the evidence is not in the appellate record before this court, but the record does indicate that there was testimony (independent of Perdue's) that the instant roadblock had been authorized or

---

7. In *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983), the Supreme Court did indirectly approve a stop at a routine driver's license roadblock to ascertain if the driver was in compliance with the Texas driver's license statute. There, it was held that the seizure of a balloon containing narcotics from an automobile at the checkpoint did not violate the fourth amendment under the "plain view" doctrine.

set up by the Sheriff's Office in Smith County. It has been held that the relative absence of supervising personnel in the planning stages of a roadblock, limited in purpose to checking driver's licenses and performing safety checks does not render the roadblock constitutionally unreasonable. *See State v. Cloukey*, 486 A.2d 143, 146 (Me.1985); *see also State v. Patterson*, 582 A.2d 1204, 1206 (Me.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

It is true that automobile drivers are not shorn of their protections under the fourth and fourteenth amendments when they leave their homes and enter their automobiles. *Prouse*, 440 U.S. at 662, 99 S.Ct. at 1400. However, an investigative stop of a vehicle is justified where a law enforcement officer has a reasonable suspicion founded upon articulable facts which indicate that a crime has been committed or is being committed by occupants of a vehicle. *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289, 292–93 (1990).

A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in the light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The basis for the investigatory stop need not amount to probable cause for an arrest. In fact, the observed conduct giving rise to the officer's suspicion of criminal activity may be wholly lawful in itself. *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980). It has been said that circumstances short of probable cause may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. *Dickey v. State*, 716 S.W.2d 499, 503 n. 4 (Tex.Cr.App.1986).

Although stopping a vehicle and detaining its occupants constitutes a seizure within the meaning of the fourth amendment, the governmental interest in investigating an officer's reasonable suspicion, base on specific and articulable facts, may outweigh the fourth amendment interest of the occupant in remaining secure from the intrusion. *Prouse*, 440 U.S. at 653–55, 99 S.Ct. at 1395–96; *Williams*, 407 U.S. at 146, 92 S.Ct. at 1923.

The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct was reasonable. *Armstrong v. State*, 550 S.W.2d 25, 30 (Tex. Cr.App.1977) (op. on rehearing). While a temporary investigative detention is allowed under certain circumstances, these circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events, rather than the subjective feelings of the detaining officer. In order to justify the intrusion, the law enforcement officer must have specific articulable facts, which in the light of his experience and general knowledge, together with other inferences from those facts, would reasonably warrant the intrusion of the citizen detained for further investigation. *United States v. Brignoni–Ponce*, 422 U.S. 873, 880–81, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607 (1975); *Dickey*, 716 S.W.2d at 504 n. 4.

A fourth amendment "seizure" occurs when a vehicle is stopped at a checkpoint or roadblock. *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 449, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412, 420 (1990); *Prouse*, 440 U.S. at 655, 99 S.Ct. at 1396. In a situation somewhat similar to the instant case, but involving a "sobriety roadblock," it was held that a driver approaching a roadblock is not "seized" until actually reaching the roadblock. *Snyder v. State*, 538 N.E.2d 961, 965 (Ind.App.1989).

Sometimes the initial stop made in connection with the operation of a roadblock will be justified under *Terry* [392 U.S. 1[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968)] because of a prior reasonable suspicion. This is the case when the vehicle fails to stop at the roadblock, when the vehicle stops and the driver and passenger change places just before reaching the roadblock, or when the vehicle avoids the roadblock in a suspicious manner.

4 WAYNE LAFAVE, *Search & Seizure: A Treatise on the Fourth Amendment*, § 10.8 (2nd ed. Supp.1988) at 4.

■ A defendant's action in relinquishing the wheel of the automobile in advance of a legal roadblock gives rise to a reasonable, articulable suspicion of criminal conduct that amply justified an investigative stop. *See Patterson*, 582 A.2d at 1206, *citing State v. Griffin*, 459 A.2d 1086, 1090 (Me.1983).

In *Coffman v. State*, 26 Ark.App. 45, 759 S.W.2d 573 (1988), the court held that the invalidity of the roadblock set up by the police to check driver's licenses and vehicles did not affect, under the fruits-of-the-poisonous-tree doctrine, the validity of the officer's stop of a vehicle which he observed reversing its direction in order to avoid the roadblock. *Id.* at 576; *see also Tims v. State*, 26 Ark. App. 102, 760 S.W.2d 78, 79 (1988), *modified on other grounds*, 26 Ark.App. 102, 770 S.W.2d 211 (1989); *Green v. State*, 530 So.2d 480 (Fla.App.1988), *rev. denied*, 539 So.2d 475 (even though police roadblock was illegal, officer's stop of defendant prompted by defendant's failure to follow directions of officer to stop at roadblock was valid).

In *Giessinger*, 454 N.W.2d at 294, the Nebraska Supreme Court reviewed a number of out of state cases and then held as follows:

> While there may be nothing suspicious in making a lawful right turn onto an existing roadway or in making a lawful U-turn before reaching a roadblock, we are persuaded that the conservation officer's observation of Giessinger's actions in driving the pickup onto the shoulder of the highway and switching places with the passenger prior to approaching the roadblock was sufficient to provide the officer with the reasonable suspicion necessary to justify the investigatory stop. *That is to say, Giessinger's actions provided a basis independent of the roadblock which justified his stop.*

Thus, we do not reach the question whether the roadblock was lawful, for while Giessinger has standing to challenge the seizure of the vehicle in which he was riding, he does not have standing to challenge the seizure of other vehicles pursuant to the roadblock.

(Emphasis supplied.)

*See Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953) ("Ordinarily, one may not claim standing ... to vindicate the constitutional rights of some third party.").

In the instant case, Officer Perdue saw the pickup truck in question stop in the middle of the roadway short of the roadblock. There appeared to be activity inside the pickup truck. It was nighttime and the officer was concerned for his safety. He directed the attention of the other officers to the vehicle. They shined their flashlights toward the pickup and its cab. The driver, a young teenager, was observed changing places with the older, taller man (later identified as the Appellant) in the center of the front seat. The pickup truck then pulled forward. The actions of the occupants in switching places prior to approaching the roadblock provided Officer Perdue with reasonable suspicion to justify the investigatory stop independent of the roadblock.[8] After Appellant was stopped, his intoxicated condition was apparent and the officer had the right to arrest him for that offense. *Valencia v. State*, 820 S.W.2d 397, 399 (Tex.App.–Houston [14th Dist.] 1991, pet. ref'd); *Christopher v. State*, 639 S.W.2d 932, 935 (Tex.Cr.App.1982); *Taylor v. State*, 421 S.W.2d 403, 407 (Tex.Cr.App. 1967).

The officer having a legal basis independent of the roadblock which justified his stop of Appellant's vehicle, we need not reach the validity of the roadblock. Appellant has standing to challenge the seizure of the vehicle in which he was riding, but he does not have standing to vindicate the constitutional

---

**8.** In addition, it is observed that in no event shall an operator's license of any class be issued to any person less than fifteen years of age. TEX.REV.CIV. STAT.ANN. art. 6687b, § 12(d) (Vernon 1977). Further, it is unlawful for any person to authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized by statute to drive. TEX.REV.CIV STAT.ANN. art. 6687b, § 36 (Vernon 1977). Officer Perdue determined at the scene that Ronnie Stewart, who had been driving the truck, was fourteen years of age and that the truck belonged to Appellant.

78

rights of others stopped at the roadblock. *Giessinger*, 454 N.W.2d at 294. Appellant's points of error are overruled.

The judgment is **affirmed.**