**Glen R. STEINBECK, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 92–CA–1407–MR.

Court of Appeals of Kentucky.

Oct. 8, 1993.

G. Weber Gilmore, Sr., George W. Gilmore, Jr., Sikeston, MO, for appellant.

Chris Gorman, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

Before HUDDLESTON, JOHNSTONE and STUMBO, JJ.

JOHNSTONE, Judge.

This appeal arises from a conditional plea entered in the Ballard Circuit Court by Glen R. Steinbeck to the charges of possession of a schedule II narcotic and driving under the influence of alcohol. A suppression issue was preserved and is addressed by this appeal. Having carefully considered the record, we affirm.

At approximately 3:15 a.m. on September 29, 1991, the appellant was driving his pickup truck from Cairo, Illinois, to his home in Ballard County, Kentucky. Local law enforcement officials had set up a sobriety checkpoint some 100 yards from the Kentucky end of the Cairo Bridge. The police had turned on the emergency lights on their vehicles, making them clearly visible from the Kentucky end of the bridge. As appellant exited the bridge, he activated his turn signal and made a left-hand turn onto East Cairo Landing Road. The East Cairo Landing Road is an unpaved country road with no visible structures or housing along its route.

After observing the pickup's turn onto the East Cairo Landing Road, Deputy Sheriff Richard Cooper got into his cruiser and followed appellant. Cooper stopped appellant's vehicle approximately 75 to 100 yards below the bridge. Appellant informed the deputy sheriff that it was his birthday and admitted that he had been drinking. Cooper described him as being unstable on his feet with a smell of alcohol on his breath. Appellant was given two field sobriety tests which he failed. He was placed under arrest for driving under the influence, and a "pat-down" search revealed a small vial of cocaine in appellant's right pants pocket. Consequently, he was also charged with possession of cocaine.

Appellant contends that the trial court erred by failing to suppress the evidence seized, as the arresting officer had no articu-

lable and reasonable suspicion that appellant had violated the law prior to the stop.

■ It is conceded that a state's use of sobriety checkpoints does not violate the Fourth and Fourteenth Amendments to the United States Constitution when the state is conducting such checkpoints pursuant to a systematic plan. *See Michigan State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). This exception does not attach where the checkpoints are random or discretionary. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

■ However, in the instant action appellant turned his vehicle from the road prior to the sobriety checkpoint. Thus, the issue becomes whether there was an articulable and reasonable suspicion of criminal activity. The *Prouse* Court held that:

> "[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."

*Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401.

Appellant argues, and it appears to be admitted, that he was not weaving in the roadway, speeding, or in any other way violating a traffic law. The only basis claimed by the deputy sheriff for the pursuit and stop of appellant was his belief that appellant was attempting to avoid the checkpoint due to intoxication. Appellant cites a litany of foreign cases which stand for the proposition that the fact that a car turns in a manner to avoid a roadblock, standing alone, is insufficient to create a reasonable suspicion to justify a stop. *See State v. Powell,* 591 A.2d 1306 (Me.1991); *State v. Talbot,* 792 P.2d 489 (Utah App.1990); *Murphy v. Commonwealth,* 9 Va.App. 139, 384 S.E.2d 125 (1989); *Snyder v. State,* 538 N.E.2d 961 (Ind.App. 1989).

The Commonwealth counters that there were reasons in addition to the mere turning prior to the checkpoint which created an articulable and reasonable suspicion of criminal activity. After testifying that he had set up several checkpoints at the same location, Deputy Sheriff Cooper testified to the following:

Q. In your experience as a deputy sheriff, have you noticed cars turning on to the East Cairo Landing Road before?

A. Yes, sir.

Q. What was the reasons for those vehicles turning off to the East Cairo Landing Road?

A. To avoid coming through the road check, I'd say, every one of those that—every road check I've been involved that every vehicle that turns there has—the driver has been drinking alcohol—consuming alcohol.

In addition to the deputy's past experience, the Commonwealth urges that the existence of a reasonable suspicion is supported by the uninhabited and unpaved road onto which appellant turned and the early morning hour at which time the incident occurred.

While there is no Kentucky case directly on point, the issue of whether an officer had a reasonable and articulable suspicion justifying the stop of a defendant's vehicle was addressed by this Court in *Creech v. Commonwealth,* Ky.App., 812 S.W.2d 162 (1991). Creech and a companion had been observed by a police officer sitting hunched toward each other in the front seat of a car in the extreme corner of a nightclub parking lot after hours. In finding the stop and search of the vehicle permissible, the *Creech* Court stated:

> It would be reasonable to suspect, considering the totality of the circumstances, that Creech and his companion could have been involved with a stolen vehicle or certainly could have been engaging in some criminal activity at the time and place ... [the police officer] observed them.

The Indiana Court of Appeals recently confronted a case with strikingly similar facts. *Snyder v. State,* 538 N.E.2d 961 (Ind. App. 4 Dist.1989). In *Snyder,* the defendant turned around in the road approximately 100 yards from a roadblock at 1:00 a.m. on a

December morning. Like the instant case, it was agreed that he had committed no traffic violations. Upon being stopped, the defendant admitted drinking and failed field sobriety tests. In resolving the issue against the defendant, the Indiana Court opined as follows:

> If the police are permitted to stop drivers without any individualized suspicion while "operating pursuant to a plan with explicit, neutral guidelines," it does not follow that police are only permitted to stop the "timid"—who obediently proceed through the roadblock—but are not permitted to stop the "bold"—those who defy the police roadblock by evading it.
>
> . . . .
>
> The better rule is that while a driver approaching a roadblock is not "seized" until actually reaching the roadblock, a driver's attempt to avoid the roadblock, by making a turn around, does raise a "specific and articulable fact" which gives rise to a reasonable suspicion on the part of a police officer that the driver may be committing a crime. Such a suspicion entitles the officer to detain the driver of the vehicle something short of a full arrest to further investigate whether or not probable cause exists for a search or arrest of the driver. *Terry v. Ohio,* (citation omitted). Such a rule has either tacitly or overtly been approved in six other states. (Footnote omitted).
>
> If police officers stationed at roadblocks were not permitted to stop such drivers, the very drivers the police seek to deter could flagrantly avoid the roadblocks and the stops would lose their deterrent value. Trooper Maxwell testified that he had pursued and stopped drivers on numerous occasions who sought to avoid roadblocks and inevitably those drivers had suspended or expired licenses, or some other violation of the law. R. at 63, 64. His experience gave him specific and articulable facts and inferences drawn therefrom to form a reasonable suspicion that Snyder was committing a crime.

*Id.* at 965.

We believe that appellant's turn away from the sobriety checkpoint, coupled with the deputy sheriff's experience in similar instances, the time of day, and the nature of the roadway onto which the appellant turned, constitute specific, reasonable, and articulable facts which allowed the police officer to draw an inference sufficient to form a reasonable suspicion that the driver might have been engaging in criminal activity.

The judgment of the Ballard Circuit Court is affirmed.

HUDDLESTON, J., concurs.

STUMBO, J., dissents, without opinion.