**Mark E. BAUDER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000056–DG.

Supreme Court of Kentucky.

Oct. 29, 2009.

Rehearing Denied Jan. 21, 2010.

---

John Richard Clay, Clay & Clay, Danville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Heather Michelle Fryman, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Richard H. Campbell, Jr., Boyle County Attorney, Danville, KY, Richard Lenn Bottoms, Commonwealth Attorney, Harrodsburg, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellant, Mark E. Bauder, was arrested on December 26, 2005, at approximately 11:00 p.m., by Kentucky State Trooper, Eric Gibson, and charged with driving under the influence of alcohol. As part of an effort by the Kentucky State Police to deter driving while under the influence during the holiday season, a roadblock was

established at the intersection of Kentucky Highway 300 and Kentucky Highway 34 in Parksville, Kentucky. The troopers activated their emergency lights and established a location on the sides of the intersection, but placed no markings or signs to notify the public in advance of the roadblock.

According to the testimony of Trooper Gibson, Appellant came to an abrupt stop within one hundred feet of the checkpoint and made a turn onto Mill Road, a side road leading to a fire station, cemetery, and several residences.[1] It is undisputed that Appellant had a clear, unobstructed view of the roadblock. At this point, no other vehicles had proceeded through the roadblock and Appellant's vehicle was the first one observed by the officer. Appellant used the side road to circumvent the 34/300 intersection, and he eventually turned off that road and re-entered Kentucky Highway 300 and continued on his way, effectively bypassing the roadblock.

Upon witnessing this, Trooper Gibson followed Appellant and proceeded to stop him. When Trooper Gibson approached Appellant, he noticed that Appellant smelled of alcohol and appeared to be under the influence. Trooper Gibson stated that he observed no other offenses committed by Appellant, and that he stopped Appellant based solely on his avoidance of the roadblock. Appellant admitted to attempting to bypass the roadblock, but stated that he did so out of a belief that there had been a wreck.

Prior to this day, Trooper Gibson had participated in over one hundred other such roadblocks. In his experience, Trooper Gibson noted that a vehicle turning away from a roadblock was generally indicative of the operator of that vehicle either driving while intoxicated or driving on a suspended license. While some drivers might turn to avoid an accident, this typically only happened when traffic was congested. As such, Trooper Gibson testified that when manpower allowed, he would routinely stop those drivers avoiding a police roadblock.

Appellant subsequently filed a motion to suppress the evidence obtained during the "unlawful, warrantless arrest, in the absence of probable cause." The Boyle District Court denied Appellant's motion to suppress and on March 17, 2007, Appellant entered a conditional guilty plea to DUI, first offense. Pursuant to a written notation on the guilty plea form, Appellant reserved the right to seek appellate review of the Boyle District Court's ruling on his motion to suppress. By order dated August 27, 2007, the Boyle Circuit Court affirmed the trial court's ruling and on December 17, 2007, the Court of Appeals denied discretionary review. Discretionary review was then granted by this Court.

 Appellant's primary contention on appeal is that the trial court erred in failing to suppress the evidence seized because the arresting officer had no articulable and reasonable suspicion that Appellant had violated the law prior to the stop. The undisputed facts establish that Appellant was subjected to an investigatory stop, and it is ultimately to be determined whether that stop was consistent with Appellant's right to be free from an unreasonable seizure as protected by the Fourth Amendment to the Constitution of the United States and Section 10 of the Kentucky Constitution.

 A police officer may constitutionally conduct a brief, investigatory stop

---

1. There is some discrepancy concerning the distance. Appellant contends that the intersection of Mill Road and Kentucky 34 was approximately 80–100 *yards* from the roadblock.

when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A reasonable suspicion is more than an "unparticularized suspicion or 'hunch.'" *Id.* at 27, 88 S.Ct. 1868. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Accordingly, the stop of an automobile and the resulting detention of the driver are unreasonable, under the Fourth Amendment, absent a reasonable, articulable suspicion that the driver is unlicensed, or that the automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The United States Supreme Court prescribed the proper standard of review in *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). *Ornelas* provides that the determination of a lower court regarding a suppression motion based on an alleged illegal search is subject to a two-pronged analysis. First, historical facts should be reviewed for clear error, and the facts are deemed to be conclusive if supported by substantial evidence. *Id.* at 699, 116 S.Ct. 1657. Second, determinations of reasonable suspicion and probable cause are mixed questions of law and fact and are, therefore, subject to *de novo* review. *Id.* In addition, we are bound to give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

Appellant contends that the totality of the circumstances in this case, as established by the undisputed evidence, did not give rise to the requisite reasonable suspicion that he may have been involved in some form of criminal or otherwise unlawful activity. He argues that none of his driving maneuvers in proximity to the checkpoint were unlawful, and that the avoidance of the checkpoint itself is not unlawful. Trooper Gibson made it clear that the sole reason he stopped Appellant was because he turned his vehicle off the highway prior to the roadblock. Thus, Appellant contends that under such circumstances, neither Trooper Gibson nor any objectively reasonable police officer would believe that the pursuit and stop were appropriate.

The Court of Appeals addressed this issue with strikingly similar facts in *Steinbeck v. Commonwealth*, 862 S.W.2d 912 (Ky.App.1993). In *Steinbeck*, police had set up a roadblock to detect intoxicated drivers and it was established approximately one hundred yards from the Kentucky end of the Cairo Bridge. At around 3:15 a.m., Steinbeck was driving his pickup truck from Cairo, Illinois to his home in Ballard County, Kentucky. After exiting the bridge, but before reaching the roadblock, Steinbeck made a left-hand turn onto an "unpaved country road with no visible structures or housing along its route." *Id.* After seeing Steinbeck turn, an officer got into his cruiser and conducted an investigatory stop. As in this case, the sole basis for the stop was the deputy sheriff's "belief that [Steinbeck] was attempting to avoid the checkpoint due to intoxication." *Id.* at 913. This belief was based in part on the sheriff's own experience that in "every road check" that he had been a part of "every [driver] that turns [on that road]

... has been drinking alcohol...." *Id.* Relying heavily on *Snyder v. State,* 538 N.E.2d 961 (Ind.Ct.App.1989), the Court of Appeals held that the officer had specific, reasonable, and articulable facts which allowed him to draw an inference sufficient to form a belief that Steinbeck might have been engaging in criminal activity, thus justifying the stop. *Steinbeck,* 862 S.W.2d at 914. This finding was based on a "totality of the circumstances" analysis:

> We believe that appellant's turn away from the sobriety checkpoint, *coupled with* the deputy sheriffs experience in similar instances, the time of day, and the nature of the roadway onto which the appellant turned, constitute specific, reasonable, and articulable facts which allowed the police officer to draw an inference sufficient to form a reasonable suspicion that the driver might have been engaging in criminal activity. (Emphasis added.)

*Steinbeck,* 862 S.W.2d at 914.

Contrary to the opinion expressed in the dissent, we will wait for another day to determine if the act of making a turn around *itself* raises a specific and articulable fact sufficient to give rise to reasonable suspicion. Here, we apply the "totality of the circumstances" approach in *Steinbeck* to determine if reasonable suspicion exists. Officers may draw on their own experience and specialized training to make inferences from, and deductions about, the cumulative information available to them that might well elude an untrained person. *United States v. Arvizu,* 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Police officers are in an extraordinary position that requires them to make split-second determinations of reasonable suspicion, sometimes in dire and even dangerous circumstances. This determination is generally made through the prism of each officer's own training and experience. *See*

*Ornelas,* 517 U.S. at 699, 116 S.Ct. 1657 ("[A] police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference."). This Court has made clear that due deference must be given to the reasonableness of inferences made by police officers. *Commonwealth v. Whitmore,* 92 S.W.3d 76, 79 (Ky.2002).

Certainly, there are a multitude of reasons why a driver may avoid a police roadblock, many of which may be completely innocent. *Bass v. Commonwealth,* 259 Va. 470, 525 S.E.2d 921, 925 (2000) ("The reasons for which a driver may reverse direction other than to evade a traffic checkpoint are legion in number and are a matter of common knowledge and experience."). However, we must apply an objective test from the viewpoint of the officer. We believe that under the circumstances of this case, reasonable suspicion arose and justified Appellant's stop by Trooper Gibson.

According to the testimony of Trooper Gibson, Appellant came to an "abrupt" stop one hundred feet from the roadblock before turning onto a side road. *See United States v. Lester,* 148 F.Supp.2d 597, 603 (D.Md.2001) ("[T]he closer a motorist is to a roadblock when he or she turns, the more objectively reasonable it may be to infer the turn was made out of a consciousness of guilt."). It is undisputed that Appellant's view of the roadblock was unobstructed when he made the turn. Moreover, at the time of making the turn, there was no congestion along the highway and no line had yet formed at the roadblock. Indeed, Trooper Gibson testified that Appellant's car was the first he saw after establishing the roadblock. It is understandable that a person may wish to avoid the delay which an encounter with

police might entail. However, in this case, virtually no delay would have resulted since Appellant was the first driver to approach the roadblock. Furthermore, Trooper Gibson observed Appellant exit the highway, proceed down Mill Road past residential opportunities or other logical destinations, and then re-enter the highway, effectively avoiding the intersection and the police roadblock. It was obvious to the officer that this was not simply a motorist intent on innocuously pulling into his own driveway. Though Trooper Gibson may not have observed any other traffic violations on the part of Appellant, his own training and experience, coupled with the above-mentioned circumstances, reasonably indicated that Appellant was intentionally avoiding the roadblock to evade arrest or detection. As such, Trooper Gibson clearly had a reasonable suspicion, based on specific and articulable facts, that Appellant was committing a crime or otherwise engaging in unlawful activity, thus justifying the investigatory stop.

The dissent centers its argument on the right to be left alone. Surely, with over 40,000 Americans losing their lives on our highways each year, a person does not enter upon our highly regulated, highly policed, overcrowded and dangerous public highways with any attending expectation of "simply being left alone." If such notion is to take on Constitutional proportion, then motorists would be entitled to simply blow through roadblocks with a wave and contemptuous grin. There would be no law on our highways.

For the reasons set forth herein, the judgment of the Boyle Circuit Court is hereby affirmed.

ABRAMSON, SCHRODER and SCOTT, JJ., concur. VENTERS, J., dissents by separate opinion, in which MINTON, C.J., and NOBLE, J., join.

VENTERS, Justice, dissenting.

I am unable to agree with the majority's conclusion that the circumstances present in this case meet the Constitutional standard of "at least articulable and reasonable suspicion" required by *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and, therefore, I respectfully dissent. I understand the majority's reliance upon *Steinbeck v. Commonwealth*, 862 S.W.2d 912 (Ky.App.1993) because the facts are similar. But, I would regard that similarity as cause to re-examine *Steinbeck*, not to stretch even thinner the concept of articulable, reasonable suspicion.

Even so, the facts in *Steinbeck* deemed to constitute reasonable suspicion were markedly stronger than those we find here. In *Steinbeck:* 1) the vehicle turned onto a side road within sight of, but before reaching the checkpoint; 2) the side road was an "uninhabited and unpaved" country road, so no legitimate reason for the turn was apparent; 3) in the arresting officer's experience, the drivers of all vehicles that have turned away from a checkpoint have been drinking alcohol; and 4) the event occurred at 3:15 a.m.

In this matter, Bauder was arrested at a time when many people are still out, around 11:00 p.m. Mill Road, onto which Bauder turned before the checkpoint, is a marked, paved, public road, with several residences in plain sight. Mill Road forms a shortcut for people traveling between Kentucky Highway 34 and Kentucky Highway 300.[2] It was also a shortcut to Bau-

---

2. The majority opinion implies that Bauder "re-entered" Kentucky Highway 300 after traveling on Mill Road. The record however reflects that Bauder was traveling on Kentucky Highway 34, turned onto Mill Road, then turned onto Kentucky Highway 300,

der's house. Additionally, Bauder correctly notes that KRS 189.930(3) prohibits driving into a block where emergency vehicles with lights flashing have stopped for an emergency. Thus, unlike the facts in *Steinbeck,* there were legitimate explanations for Bauder's turn onto Mill Road that the arresting officer should have considered before determining "articulable and reasonable suspicion" existed to instigate a stop. Bauder could have been taking a shortcut or avoiding what appeared to be an emergency on the road ahead. Significant is the fact that the arresting officer acknowledged that he attempts to stop every vehicle that turns before reaching a checkpoint[3], despite his own experience that some drivers who turn to avoid the checkpoint are not guilty of any offense. He did not, therefore, use any discretion or articulate any reason to differentiate Bauder's activity from the innocent drivers he has previously stopped.

The facts in this case do not support the level of suspicion created by the facts in *Steinbeck.* The majority's holding expands *Steinbeck* so that the police may now apprehend and detain any person who acts in a manner that suggests an aversion to police contact.

We recently held that one's mere presence on the street in a high crime area late at night does not create an articulable, reasonable suspicion to support police intervention. *Strange v. Commonwealth,* 269 S.W.3d 847, 852 (Ky.2008). We also held, citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), that a police officer is free to approach any person in a public place for any reason,

and ask questions. *Strange,* 269 S.W.3d at 850. However, the corollary of that rule is that the "person may decline to listen to the questions at all and *may go on his way for doing so; and his refusal to listen or answer does not, without more, furnish those grounds* [to seize his person]." *Royer,* 460 U.S. at 498, 103 S.Ct. 1319 (Emphasis added). *See also Quintana v. Commonwealth,* 276 S.W.3d 753, 759–760 (Ky. 2008) (holding that one's refusal to open his door and talk to police when they knock does not justify any further intrusion by the police). The majority's opinion in this matter contradicts that rule, saying in effect that any behavior that indicates a desire to avoid interaction with the police is alone suspicious enough to justify a seizure of the person and at least a temporary detention of that person for further investigation.

The freedom to be left alone is a cherished aspect of our liberty. I fear that the majority opinion will lead to the infringement of that freedom because it sanctions the government's interference with those who simply choose to be left alone, thereby equating the desire to be free from government intrusion with criminal behavior. Despite his own experience, the arresting officer here considered nothing other than Bauder's lawful turn onto a side street as a reason to pursue him. The officer did not exercise any discretion whatsoever. He did not evaluate any of the innocent explanations for Bauder's turn. He did not even act on a non-specific hunch that illegal activity was afoot. He simply acted on his own rule—apprehend the driver of every car that turns away before reaching

which begins at the intersection where the police roadblock was located.

**3.** The trooper testified that when the officers are busy with vehicles at the checkpoint, it may be impossible to pursue those that turn away. It is interesting that Appellant was the

first vehicle to approach the checkpoint, and when the officer left the site to catch him, the roadblock dissolved due to lack of manpower. Thus, not a single vehicle ever went through the checkpoint that night.

the checkpoint. The only "circumstance" articulated by the majority to constitute reasonable suspicion is that the officer could think of no reason for Bauder's turn other than an apparent preference to avoid police contact, from which the officer inferred illegal activity. Nothing is offered to justify the stop except Bauder's use of the shortcut that bypassed the roadblock.

It is absurd hyperbole of the majority to suggest that, "There would be no law on our highways" if, as I urge here, we simply adhere to our time-honored Constitutional concept of probable cause and reasonable, articulable suspicion. By this decision, we are now declaring that a citizen's desire to be left alone, to avoid conversation with the police, is by itself a justification for detention and interrogation. For that reason, I dissent.

MINTON, C.J., and NOBLE, J., join.