JOHNSON, JUDGE:
Tyree Yopp appeals an order of the Hardin Circuit Court denying his motion to suppress certain statements and evidence on the basis that they were the product of an illegal traffic stop. Pursuant to an agreement with the Commonwealth, Yopp entered a conditional guilty plea, reserving the right to appeal the trial court's denial of his suppression motion. After reviewing the record in conjunction with the applicable legal authority, we affirm the order of the circuit court.
BACKGROUND
In January 2018, U.S. Post Office Inspectors notified officers of the Greater Hardin Narcotics Task Force that they had flagged as unusual three packages addressed to different locations in Hardin County. Involved in the resulting drug investigation were Task Force Managing Officer Clay Ellis, Task Force Detective Clinton Turner, Special Agent Jennifer Auckerman of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and Kentucky State Police ("KSP") Officer Seth *292 Payne. After examining the suspicious packages, Task Force officers determined that they contained marijuana and obtained search warrants for the three addresses on the packages. Task Force officers subsequently attempted controlled deliveries of the three packages, successfully making contact with residents at two of the addresses. During the execution of the search warrants at those two addresses, the contacted recipients stated that Yopp was the "final destination" of the package that each received and each identified Yopp after being shown his picture on his Facebook page.
Upon receiving this information about Yopp from the package recipients, Task Force Detective Turner reviewed Yopp's Facebook page and noticed a picture of a black Chevy truck which purportedly belonged to him. During this time, Detective Turner, Special Agent Auckerman, and two other Task Force officers continued to watch the residence where they had left the third package outside in plain sight. While watching the residence, Detective Turner observed a truck similar to the one he had seen on Yopp's Facebook page driving back and forth in front of the premises with the package sitting outside. Detective Turner then conducted a record check on the truck's license plate and identified it as belonging to Yopp.
Detective Turner requested that KSP Officer Payne perform a traffic stop of Yopp's truck, utilizing his K-9 drug-sniffing dog. After being stopped, Yopp gave Officer Payne permission to search his vehicle and told the officer there was a pistol in the truck. As Officer Payne took his dog around the exterior of the truck, it alerted to the presence of drugs within the vehicle. A subsequent search revealed a .45 caliber pistol and a jar with marijuana residue inside the vehicle. Detective Turner then read Yopp his Fifth Amendment rights pursuant to Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to questioning him. After Yopp disclosed his home address, Detective Turner asked permission to search the residence[1] and Yopp consented.
While Detective Ellis drove Yopp's truck to the police station, Yopp rode with Detective Turner and Special Agent Auckerman to his residence. The vehicle in which Yopp rode was not marked as a police vehicle, did not have police lights or a cage, and he was not restrained while riding in the front seat.
Upon arriving at Yopp's residence, Detective Turner knocked on the front door, which was ajar. Yopp, Detective Turner, and Special Agent Auckerman entered the residence and encountered two other individuals, one of whom was Yopp's roommate. Detective Turner gave the roommate Miranda warnings and both he and Yopp signed a consent to search form. Task Force officers discovered guns, cash, marijuana, marijuana butter, a marijuana butter machine, smoking apparatus, and other drug paraphernalia at the residence. Yopp then gave oral permission for Detective Turner to search his cell phone. Upon completing this search, Detective Turner discovered text messages corroborating the statements concerning Yopp's involvement which had been made by the residents of the first two addresses at which the suspicious packages had been delivered.
Yopp and his roommate agreed to go to the police station, where they were again given Miranda warnings, and each signed *293 a waiver administered by Detective Ellis. Detective Ellis interviewed the two men and then placed Yopp under arrest. Yopp ultimately pleaded guilty to trafficking in marijuana, greater than 5 pounds, gun enhanced;[2] complicity;[3] illegal use/possession of drug paraphernalia;[4] and engaging in organized crime.[5]
ANALYSIS
Yopp argues in this appeal that the trial court erred in refusing to suppress the evidence against him because the initial stop and search of his truck was not supported by reasonable suspicion. If the stop and search is invalid, Yopp insists that his consent to search his residence and cell phone was not voluntarily given and thus he should not have been subjected to custodial interrogation.
In Baltimore v. Commonwealth , 119 S.W.3d 532 (Ky. App. 2003), this Court set out the standard by which courts review allegations that a search is illegal because the police officer lacked reasonable suspicion:
Both the reasonable suspicion and probable cause objective standards are flexible concepts to be applied in a commonsense manner based on the totality of the circumstances in each case. In determining the totality of the circumstances, a reviewing court should not view the factors relied upon by the police officer(s) to create reasonable suspicion in isolation but must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training.
Kentucky has adopted the standard of review set out by the United States Supreme Court in Ornelas v. United States.[ 6] Under that approach, the decision of the circuit court on a motion to suppress based on an alleged illegal search following a hearing is subject to a two-part analysis. First, factual findings of the court involving historical facts are conclusive if they are not clearly erroneous and are supported by substantial evidence. Second, the ultimate issue of the existence of reasonable suspicion or probable cause is a mixed question of law and fact subject to de novo review. In conducting this analysis, the reviewing court must give due weight to inferences drawn from the facts by the trial court and law enforcement officers and to the circuit court's findings on the officers' credibility.
Id. at 539 (internal citations omitted). Further, the Supreme Court of Kentucky has emphasized that appellate courts are entitled to disturb a trial court's findings only:
if those findings are clearly erroneous. And, the dispositive question that we must answer, therefore, is whether the trial court's findings of fact are clearly erroneous, i.e., whether or not those findings are supported by substantial evidence. "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing *294 court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.
Moore v. Asente , 110 S.W.3d 336, 354 (Ky. 2003) (internal citations omitted).
Although Yopp contends that Detective Turner lacked the requisite reasonable and articulable suspicion to order the stop and search of his truck, the trial court concluded otherwise and supported that conclusion with the following specific findings: 1) prior to the stop and search of Yopp's vehicle, Task Force officers had previously made contact with the addressees for two of the drug packages and both identified Yopp as the ultimate recipient of each package; 2) when shown Yopp's picture on his Facebook page, each addressee confirmed that he was the person to whom the packages actually belonged; 3) investigation of Yopp's Facebook page indicated that he was the owner of a black Chevy truck, the same type of truck Detective Turner saw driving back and forth in front of the address where the third package was left outside in plain sight; and 4) Detective Turner's record check of the license plates on the truck confirmed it was registered to Yopp. Because each of these findings is supported by substantial evidence, we may not disturb them. Moore, supra .
With those findings of fact in mind, we next conduct a de novo review of the trial court's conclusion that the officer had a reasonable, articulable suspicion sufficient to conduct a traffic stop on Yopp's vehicle. The standard for a finding of a reasonable, articulable suspicion is relatively low. "Reasonable suspicion is the lowest tier of the pyramid comprised of probable cause (level two) and preponderance of the evidence (level three): 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard.' " Baker v. Commonwealth , 475 S.W.3d 633, 634 (Ky. App. 2015) (quoting United States v. Arvizu , 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002) ). The United States Supreme Court instructs that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio , 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Further, reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop. United States v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Accordingly, as explained by the United States Supreme Court, the stop of an automobile and the resulting detention of the driver are unreasonable under the Fourth Amendment absent a reasonable, articulable suspicion that the driver is unlicensed, or that the automobile is not registered, or that either the vehicle or an occupant is subject to seizure for violation of the law. Delaware v. Prouse , 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).
The factors necessary to satisfy the "reasonable, articulable suspicion" standard are best illustrated by the opinion in Bauder v. Commonwealth , 299 S.W.3d 588 (Ky. 2009). In order to discourage impaired driving during the holidays, the police in Bauder established a roadblock at an intersection with their vehicle lights activated. After observing Bauder abruptly stop and turn his vehicle off the highway shortly before reaching the roadblock, a *295 police officer pursued and stopped Bauder solely on the basis of the abrupt turn which was not, in and of itself, illegal. In rejecting the appellant Bauder's claim that the officer had no reasonable and articulable suspicion to stop his vehicle, the Supreme Court of Kentucky held:
Though Trooper Gibson may not have observed any other traffic violations on the part of Appellant, his own training and experience, coupled with the above-mentioned circumstances, reasonably indicated that Appellant was intentionally avoiding the roadblock to evade arrest or detection. As such, Trooper Gibson clearly had a reasonable suspicion, based on specific and articulable facts, that Appellant was committing a crime or otherwise engaging in unlawful activity, thus justifying the investigatory stop.
Id. at 593.
As in Bauder , there was nothing illegal about Yopp's driving back and forth in front of a particular address, but that behavior, when combined with the totality of the other evidence available to Detective Turner, created a reasonable, articulable suspicion to support the conduct of an investigatory stop. Once lawfully stopped, Yopp willfully gave permission for a search of his vehicle. Thus, we perceive no basis for disturbing the trial court's refusal to suppress the evidence seized as a result of the investigatory stop. Nothing in the record suggests that Yopp's consent to search his vehicle was made under duress or that he was improperly coerced. As this Court previously emphasized, "proper consent terminates the need for a search warrant." Lynn v. Commonwealth , 257 S.W.3d 596, 598 (Ky. App. 2008).
Yopp also argues that his consent to search his residence and cell phone was not voluntarily given. In Hampton v. Commonwealth , 231 S.W.3d 740 (Ky. 2007), our Supreme Court reiterated the standard by which appellate courts are to review such claims:
While it is fundamental that a consent must be free, voluntary, and without coercion, it is also the case that "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte , 412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854 (1973). Questions of fact are subject to review only for clear error, the most deferential standard of review. Miller v. Eldridge , 146 S.W.3d 909, 915 (Ky. 2004). The trial court's findings were based squarely in the evidence presented at the suppression hearing. While the court was ultimately required to choose between various competing and inconsistent versions of the events, that does not undermine the decision. In fact, that is the essential function of the trial court as the trier of fact when presented with preliminary questions such as whether consent was voluntarily given. Thus, the trial court's finding that Appellant's consent to search was voluntary was not clearly erroneous. Moreover, Appellant's consent did not limit the scope of the search to that of a pat-down, thus the fact that the police also searched in his shoe was not improper.
Id. at 749. Here, the trial court specifically found that after the stop and initial search of his vehicle, Yopp was properly afforded Miranda warnings prior to being asked whether his residence could be searched. Yopp gave the officer permission to conduct the search. There is nothing in the record indicating Yopp was unduly pressured or coerced into giving his permission. Upon arrival at the residence, Yopp's roommate was also provided Miranda *296 warnings, after which both men signed a consent to search form. During the search of the residence, Detective Turner sought, and received, permission to search Yopp's cell phone. Because each of these factual findings is supported by evidence adduced at the suppression hearing, they cannot be set aside as clearly erroneous.
Yopp produces no evidence beyond mere conjecture to support his contention that the permission to search his truck, home, and cell phone was involuntarily given. In light of the facts that Yopp was properly afforded his Miranda rights at the scene of the traffic stop; agreed to travel with Task Force officers to his residence for the purpose of a search; signed a consent to search form; and gave permission for a search of his cell phone, we are persuaded that the trial court did not err in refusing to suppress the evidence obtained from the search. As previously stated, proper consent negates the need for a search warrant. Lynn , 257 S.W.3d at 598. Because nothing in the record suggests that Yopp's willful participation in the Task Force officers' investigation of his home and cell phone was the product of duress or coercion, we are convinced that the trial court properly denied the motion to suppress.
Yopp's final argument for reversal centers on his complaint that he was improperly subjected to custodial interrogation. Commonwealth v. Lucas , 195 S.W.3d 403, 405 (Ky. 2006), provides the standard for our review:
This Court has used a de novo standard of review in deciding whether the Fifth Amendment protection against self-incrimination is applicable to a particular situation. Both the U.S. Supreme Court and the Sixth Circuit Court of Appeals have held that the question of whether a defendant is in custody is a mixed question of law and fact to be reviewed de novo. We also recognize that the findings of the trial judge are conclusive if supported by substantial evidence and the decision must have been demonstrated to have been clearly erroneous.
We conclude that the standard of review in [determining whether a defendant is in custody] is de novo.
Id. at 405 (internal citations omitted). Yopp maintains that from the moment he was removed from his truck, he was subjected to an ongoing custodial interrogation. "Custodial interrogation has been defined as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way." Id. (emphasis added).
In finding that Yopp had not been subjected to custodial interrogation, the trial court stated:
Yopp was not taken into custody until the completion of his interview at the Radcliff Police Department, and he was also not "otherwise deprived of his freedom of action" throughout these events. The officers did not exert authority over Yopp, but rather made requests, such as stepping out of the vehicle so his firearm could be retrieved and accompanying them in the front seat of Detective Turner's unmarked vehicle to [Yopp's] residence. Even if there was "custodial interrogation," Detective Turner orally advised Yopp of his Miranda rights during the traffic stop, and Yopp signed a written waiver of his Miranda rights at the Radcliff Police Department.... Yopp was not subject to custodial interrogation throughout these events and even if he was, he was advised of his Miranda rights more than once.
While our analysis of this issue is de novo , we are convinced that the conclusion of the trial court and the logic it employed in *297 reaching that conclusion are sound. The trial court's finding that Yopp was not deprived of his freedom in any significant way, coupled with the repeated recitations of his rights under Miranda , are more than ample support for its conclusion that there was no improper custodial interrogation. Again, nothing in the record supports Yopp's contention he was not free to cease cooperating at any time; nor was he prohibited from asserting his rights under Miranda .
Finally, we find nothing in the record supporting Yopp's argument that statements he made prior to having been advised of his rights were utilized in his eventual prosecution. Although Yopp insists that he is entitled to a remand to require the trial court to make findings on that allegation, we perceive no error which would require remand. As previously noted, any voluntary statements Yopp may have made prior to being advised of his Miranda rights were not the product of coercion, nor can we conclude that any such statements would change the result regarding evidence obtained on the basis of his consent to search his residence and his cell phone. The trial court in this case had more than sufficient evidence to support its denial of Yopp's motion to suppress. There is no basis upon which we might set its decision aside.
CONCLUSION
Based upon the foregoing, we affirm the order of the Hardin Circuit Court denying the motion to suppress.
ALL CONCUR.

Yopp's residence was a different address from the third location being "staked out" by the Task Force.

Kentucky Revised Statutes ("KRS") 218A.1421, KRS 218A.992, a Class B felony

KRS 502.020

KRS 218A.500, a Class A misdemeanor

KRS 506.120, a Class B felony