RENDERED:  OCTOBER 9, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1300-MR

HEATHER SMITH                                                                    APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.          HONORABLE BRANDY O. BROWN, JUDGE
ACTION NO. 18-CR-00795

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

ACREE, JUDGE:  Heather Smith appeals the Madison Circuit Court's denial of her motion to suppress all physical evidence recovered from a search of her vehicle.  She claims Kentucky State Police Trooper Briston Smith unlawfully detained her during a routine traffic stop in order to conduct a K-9 sniff of her

vehicle that resulted in the seizure of narcotics and money. After careful review, we affirm.

## BACKGROUND

Trooper Smith was on patrol when he observed Heather fail to use a turn signal while entering Greens Crossing Road in Madison County. Trooper Smith turned around and saw Heather slow down in front of the first house on the right. As he approached, the car began to move. At this point, he initiated a stop. Trooper Smith testified he had worked this area on multiple occasions and considered it a "high crime area." Specifically, he testified that he has made multiple drug arrests in the area and conducted two search warrants of the first house on the right of Greens Crossing Road – the residence where Heather initially stopped.

Upon approaching the car, Trooper Smith asked Heather and her passenger, Mr. Tate, for identification. Heather was able to produce her driver's license, while Tate provided a Social Security card. Trooper Smith testified he immediately noticed a large bulge in Tate's sock. Upon inquiry, Tate pulled out a large roll of money, which he stated he earned from working construction. Tate also noted that the roll did not contain as much money as its size suggested.

Trooper Smith noted Heather was visibly shaking and her legs were moving non-stop. Heather told Trooper Smith she was shaking because she was

out on parole and had been arrested a month earlier by the KSP drug interdiction team for drug trafficking. When asked where she was going, Heather stated she was going to look at a house to rent or buy on Charlie Norris Road, but she was not certain where the house was located. Tate also informed Trooper Smith they were going to a house on Charlie Norris Road, but had no clue why they were going there.

Trooper Smith then asked Heather for a copy of her car insurance. Heather was unable to produce a copy but stated she would be able to contact her insurance company and get a copy sent to her phone if Trooper Smith would allow it. Trooper Smith allowed her time to produce insurance but asked her to exit the vehicle while she was handling the problem. While Heather was standing outside the vehicle, Trooper Smith noticed Tate reaching behind and in-between the seats several times. He then asked Tate to exit the vehicle for officer safety purposes.

Based on the location being a high-crime area, Heather's nervous behavior, the size of the money roll in Tate's sock, the inconsistent stories as to why they were headed to the Charlie Norris Road house, and Tate rummaging around in the vehicle, Trooper Smith asked for permission to search the vehicle. Heather declined. He then informed her of his intention to call for a K-9 unit while she looked for her insurance.

Another trooper arrived on the scene and waited with Heather and Tate while Trooper Smith returned to his vehicle to call a K-9 unit. Trooper Smith testified it took approximately thirteen minutes for Deputy Bol to arrive with the K-9. He remained in his cruiser the entire thirteen minutes, verifying their information, completing a CourtNet check, and working on a citation. When the K-9 unit arrived, Trooper Smith exited his cruiser. At this point, Heather was able to provide Trooper Smith with her proof of insurance. Because Trooper Smith was inside his cruiser while waiting on the K-9 unit, he could not attest to the exact time Heather obtained her insurance, but only that it was provided to him upon exiting his cruiser. He also noted that he had not completed the citation at this point.

The K-9 immediately alerted to the vehicle. A search recovered 60 grams of methamphetamine, 4 grams of heroin, $732.00 on and around where Tate was sitting, and $1,150.00 and other narcotics in a box with Heather's name and address on it.

Heather was indicted on six drug-related crimes. She moved to suppress the evidence obtained from her car, arguing Trooper Smith unlawfully detained her for thirteen minutes while waiting on the K-9 unit. The circuit court denied her motion, concluding Trooper Smith had reasonable articulable suspicion

-4-

to detain Heather until the K-9 unit arrived. Heather pleaded guilty, reserving her right to appeal. She was sentenced to five years in prison. This appeal followed.

## ANALYSIS

Heather's argument on appeal is that the circuit court erroneously denied her motion to suppress. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Because a traffic stop is considered a seizure of the person, it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). Generally, a traffic stop is deemed unreasonable if it is "prolonged beyond the point reasonably required to complete the stop's mission." *Moberly v. Commonwealth*, 551 S.W.3d 26, 29 (Ky. 2018), *reh'g denied* (Aug. 16, 2018) (citing *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015)). In other words, an officer's "[a]uthority for the seizure [of the vehicle and the driver] ends

when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* (citing *Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614).

However, "a traffic stop may be prolonged beyond the time required to effectuate the purpose of the stop when additional information properly obtained during the stop provides the officer with a reasonable and articulable suspicion that other criminal activity is afoot." *Id.* (citing *Commonwealth v. Bucalo*, 422 S.W.3d 253, 259 (Ky. 2013)); *see Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968). Because "[a] dog sniff . . . is a measure aimed at detect[ing] evidence of ordinary criminal wrongdoing, [it] is not an ordinary incident of a traffic stop." *Davis v. Commonwealth*, 484 S.W.3d 288, 293 (Ky. 2016) (citations omitted).[1] Accordingly, an officer may not prolong a traffic stop for the purpose of facilitating a K-9 sniff search, unless he acquires reasonable articulable suspicion that crime is afoot. *Bucalo*, 422 S.W.3d at 258.

Heather does not challenge the initial traffic stop. Instead, she asserts Trooper Smith unconstitutionally prolonged the traffic stop, without reasonable articulable suspicion, when he deviated from the stop's mission for thirteen minutes to call for a K-9 unit and verify her information in his cruiser. We disagree.

---

[1] Dog sniff in and of itself is not unconstitutional.

As an initial matter, the circuit court did not make a finding as to whether Trooper Smith actually prolonged the stop.[2]  Instead, it concluded he had reasonable articulable suspicion to briefly detain Heather to conduct a dog sniff of her car.  Because we agree with the circuit court's ruling, we limit our discussion to this issue.

"Reasonable suspicion is the lowest tier of the pyramid comprised of probable cause (level two) and preponderance of the evidence (level three): 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard.'"  *Baker v. Commonwealth*, 475 S.W.3d 633, 634 (Ky. App. 2015) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)).  Although reasonable suspicion is a relatively low standard, it "is more than an unparticularized suspicion or hunch."  *Bauder v. Commonwealth* 299 S.W.3d 588, 591 (Ky. 2009) (internal quotation marks omitted).

A "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880.  In doing so, officers "may draw on their own experience and specialized training to make inferences …."

---

[2] Trooper Smith consistently testified, on cross-examination, that he did not detain Heather, but merely gave her the opportunity to produce a copy of her insurance.

*Bauder*, 299 S.W.3d at 592. And, we "consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." *Id.* at 591.

The Commonwealth points to six factors giving rise to Trooper Smith's reasonable suspicion: (1) Heather's presence in a high-crime area; (2) her nervousness to the point she was visibly shaking; (3) her admission to being arrested for drug trafficking a month prior; (4) the large roll of money in Tate's sock; (5) Tate suspiciously rummaging in the car to the point Trooper Smith had to ask him to exit the vehicle; and (6) the inconsistent responses to Trooper Smith's inquiries as to why they were going to the house on Charlie Norris Road.

Heather asserts none of these factors alone gives rise to reasonable suspicion. Although we agree with that specific assertion, we are obligated to consider all factors together and not the individualized merits of each. In light of the totality of the circumstances observed by Trooper Smith, we conclude he had reasonable suspicion to detain Heather to conduct a K-9 sniff of her car.

Trooper Smith was patrolling a high-crime area. He observed Heather slow down in front of the first house on the right, a location where he had conducted multiple searches based upon warrants. Although her presence in a high-crime area alone is insufficient to establish reasonable suspicion, "a location's characteristics are relevant in determining whether the circumstances are

-8-

sufficiently suspicious to warrant further investigation[.]" *Illinois v. Wardlow*, 528 U.S. 119, 119, 120 S. Ct. 673, 674, 145 L. Ed. 2d 570 (2000) (citations omitted). Second, Trooper Smith described Heather as extremely nervous and visibly shaking. Nervousness is an important factor in the reasonable suspicion analysis. *Adkins v. Commonwealth*, 96 S.W.3d 779, 788 (Ky. 2003). Adding to the suspicions aroused by Heather's nervous behavior is her explanation she had been arrested a month earlier for drug trafficking. It is reasonable to assume she may be nervous because she was once again engaged in drug trafficking. "[A]n officer's knowledge about a suspect's prior record can be a relevant factor in the reasonable suspicion analysis." *Commonwealth v. Smith*, 542 S.W.3d 276, 284 (Ky. 2018) (citation omitted). That knowledge, of course, can come from the suspect herself.

In addition to Heather's suspicious conduct, Trooper Smith found Tate's conduct suspicious. First, he discovered a large roll of cash in Tate's sock. Although Tate had a plausible explanation how he received the cash, Trooper Smith found it very suspicious that he would keep it in his sock. Under certain circumstances, a large amount of cash is a relevant factor in the officer's reasonable suspicion. *See Commonwealth v. Garrett*, 585 S.W.3d 780, 787 n.7 (Ky. App. 2019). We find the roll of cash in this instance to be relevant. Moreover, Trooper Smith observed Tate reaching behind and in between the seats.

Given the circumstances, it is certainly reasonable that Trooper Smith believed Tate was attempting to conceal something.

Finally, Heather and Tate gave inconsistent stories as to why they were going to the house on Charlie Norris Road. Heather told Officer Smith they were going there to possibly rent or buy. It seems illogical that Tate would have no idea why they were going to the house if, in fact, they were looking to rent or buy the property.

Based on the foregoing, we find Trooper Smith had reasonable suspicion to detain Heather to conduct a K-9 sniff of her car.

## CONCLUSION

The Madison Circuit Court's denial of Heather's motion to suppress is affirmed.

LAMBERT, JUDGE, CONCURS.

CLAYTON, CHIEF JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Lauren Lewis
Assistant Attorney General
Frankfort, Kentucky