RENDERED: JULY 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0922-MR

JACKIE LAMONT NEAL                             APPELLANT

                 APPEAL FROM JEFFERSON CIRCUIT COURT
v.                    HONORABLE ERIC J. HANER, JUDGE
                   ACTION NO. 14-CR-002357

COMMONWEALTH OF KENTUCKY                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Jackie Lamont Neal brings this appeal from an August 3, 2021, order of the Jefferson Circuit Court denying Neal's Kentucky Rules of Criminal Procedure (RCr) 11.42 motion to vacate his sentence of imprisonment. We affirm.

In August 2014, five separate robberies occurred at four different Speedway stores in Louisville, Kentucky. Shortly after one of the robberies and in close proximity thereto, an officer with the Louisville Metro Police Department

(LMPD) stopped a white truck driven by Neal.[1]  The officer informed Neal that a robbery had just occurred at a Speedway store.  The officer questioned Neal and quickly investigated the truck's cabin.  Neal was then allowed to leave.  On the following day, the officer reviewed the surveillance video from the Speedway store and the video of the stop.  The officer then believed that Neal was, in fact, the robber.[2]  LMPD eventually obtained a search warrant to search the apartment and motor vehicle of Neal's fiancée.  The police seized clothing similar to those worn by the robber and a package of cigarillos similar to those stolen from the Speedway store.

On September 11, 2014, the Jefferson County Grand Jury indicted Neal upon five counts of robbery in the first degree, one count of possession of a controlled substance, and with being a persistent felony offender in the first degree. The jury ultimately found Neal guilty of five counts of second-degree robbery and one count of illegal possession of a controlled substance.  At the penalty phase of the trial, the jury recommended a total sentence of seventeen and one-half years' imprisonment, upon finding Neal to be a first-degree persistent felony offender.

---

[1] The encounter was recorded by a dash camera in the police cruiser.

[2] The robber wore a facial covering to obscure his face.

By a Judgment of Conviction entered on December 16, 2015, the circuit court sentenced Neal to seventeen and one-half years in prison.[3]

Subsequently, on March 11, 2019, and June 25, 2020, Neal filed a motion to vacate and a supplemental motion to vacate pursuant to RCr 11.42. Therein, Neal argued that trial counsel rendered ineffective assistance, thus entitling him to RCr 11.42 relief. In an August 3, 2021, order, the circuit court denied the RCr 11.42 motion without an evidentiary hearing. This appeal follows.

Neal initially contends that trial counsel was ineffective for failing to file a motion to suppress evidence obtained as a result of the purported illegal stop of his motor vehicle. In particular, Neal argues:

> The August 18, 2014, traffic stop of Jackie Neal by Officer Raifsnider was a warrantless and unreasonable seizure and search of Jackie Neal and his effects. As such, a motion to suppress the traffic stop was meritorious and should have been filed. . . .
>
> . . . .
>
> Mr. Neal was "seized" during the August 18, 2014, traffic stop. The driver of a vehicle is considered "seized" when law enforcement conducts a traffic stop. . . .
>
> The "event chronology" associated with the August 18, 2014, 911 call appears to show the 911 call coming in at 1:27:52 a[.]m. The description of the

---

[3] Jackie Neal pursued a direct appeal, and the Court of Appeals affirmed the judgment of conviction in *Neal v Commonwealth*, No. 2016-CA-000076-MR, 2017 WL 3951899 (Ky. App. Sep. 8, 2017).

assailant given at 1:28:38 a.m. as a black male wearing a white shirt, shorts, with a brown bag over a gun. At 1:29:20 [a.m.] it is reported that the assailant fled on foot towards the east.

The dash cam video recording of the August 18, 2014[,] traffic stop of Jackie Neal by Officer Raifsnider was introduced at trial as Commonwealth's Exhibit No. 20. The video begins with Officer Raifsnider pulling onto Blowing Tree Road from the Speedway parking lot at 4547 Taylorsville Road and driving north. A white pickup truck passes Officer Raifsnider traveling south on Blowing Tree Road. Officer Raifsnider immediately turns around in the middle of Blowing Tree Road to follow it. Officer Raifsnider follows the white pickup truck onto Taylorsville Road traveling west, and immediately initiates a felony traffic stop using his emergency lights and siren.

Officer Raifsnider orders the driver to put both of his hands out of the window. He then orders the driver to step out of the white pickup truck. Officer Raifsnider commands the driver to keep his hands up and to walk to the back of the white pickup truck.

Officer Raifsnider asks the driver where he was coming from before ordering him to turn around. Officer Raifsnider then pats the driver down and finds nothing. The driver is Jackie Neal.

Officer Raifsnider asks Mr. Neal a second time where he was coming from. Mr. Neal is cooperating. Officer Raifsnider can be heard advising the dispatcher on his radio that he had stopped a white truck and that he doesn't know if the driver was going to be the suspect or not.

Officer Raifsnider asks Mr. Neal a third time where he was coming from and proceeds to search the cab of the white pickup truck. Officer Raifsnider tells

Mr. Neal, "*Here's the deal, we just had a robbery up at Speedway, so you were the first vehicle coming out right there*."

Officer Raifsnider then asks for Mr. Neal's identification and follows him to the cab of the white pickup truck to retrieve it. Before Mr. Neal hands Officer Raifsnider his operator's license, Officer Raifsnider can be heard telling dispatch, "It's not our vehicle."

The traffic stop obviously constituted a warrantless seizure and eventual search of Mr. Neal. It was also unsupported by a reasonable and articulable suspicion that either Mr. Neal was unlicensed, that the truck was unregistered, or that Mr. Neal or the truck were involved in criminal activity as required by *Bauder v. Commonwealth*, 299 S.W.3d 588 (Ky. 2009).

Neal's Brief at 7-10 (citations omitted). Neal maintains that trial counsel was deficient for failing to file a motion to suppress as the stop was conducted without reasonable suspicion of criminal activity. Neal points out that the search warrant was issued based upon the officer's identification of him from the dash camera video of the stop. Thus, Neal believes that trial counsel rendered ineffective assistance, and he is entitled to relief under RCr 11.42.

To prevail upon a claim of ineffective assistance of counsel, movant must demonstrate that counsel's performance was deficient and that such deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice is satisfied by showing there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been

-5-

different.  *Commonwealth v. Crumes*, 630 S.W.3d 630, 636 (Ky. 2021).

Additionally, an RCr 11.42 motion is properly denied without an evidentiary

hearing if the allegations raised are conclusively refuted upon the face of the

record.  *Commonwealth v. Searight*, 423 S.W.3d 226, 231 (Ky. 2014).

In its August 3, 2021, order summarily denying the RCr 11.42 motion,

the circuit court concluded that the police officer possessed reasonable suspicion of

criminal activity to justify an investigatory stop of Neal's motor vehicle; therefore,

the court believed that trial counsel was not deficient by failing to file a motion to

suppress evidence:

> At approximately 1:30 a.m. on August 18, 2014,
> Louisville Metro Police Officer Tucker Raifsnider
> responded to a report of a robbery at the Speedway store
> at the intersection of Taylorsville Road and Blowing Tree
> Road.  The clerk reported that the robber was wearing a
> white shirt and shorts and had fled on foot in the
> direction of Blowing Tree Road, which is a service road
> that primarily provides access to a large apartment
> complex across the street from the store.  After receiving
> the clerk's report, Officer Raifsnider returned to his
> cruiser and turned onto Blowing Tree Road.  He saw a
> white Ford F-150 truck in the oncoming land [sic]
> heading towards Taylorsville Road.  After following the
> truck a short way on Taylorsville Road, Officer
> Raifsnider activated his lights and stopped the truck.
> During the stop, Officer Raifsnider observed that Mr.
> Neal, who was driving the truck, was wearing a grey
> work shirt, shorts, and a baseball cap.  Officer Raifsnider
> ordered Mr. Neal out of his truck, conducted a pat-down
> search, took Mr. Neal's identifying information, and
> performed a cursory search of the interior of the truck.
> The stop then concluded with Officer Raifsnider

releasing Mr. Neal without seizing any evidence either from his person or his truck. Given that the stop occurred within minutes after the robbery, in close proximity to the scene of the robbery and to the location where the robber had fled, and at a time of night when few other people or vehicles were on the roadways, the Court finds that Officer Raifsnider had a reasonable, articulable suspicion that Mr. Neal had engaged in criminal activity and, therefore that the stop was lawful. The brief stop was no more intrusive than necessary to promote the legitimate governmental interest in investigating and apprehending the individual who had committed the robbery shortly before at the nearby Speedway store. Because Mr. Neal never had a meritorious claim under the Fourth Amendment or its counterpart under the Kentucky Constitution, his trial counsel could not have been ineffective in failing to file a motion to suppress evidence flowing from the stop.

August 3, 2021, Order at 5-6 (citations omitted). We agree with the circuit court.

It is well-established that a stop of a motor vehicle by police implicates the ban on unreasonable search and seizure found in the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution. *Commonwealth v. Bucalo*, 422 S.W.3d 253, 257-58 (Ky. 2013). However, "police may briefly detain someone for investigative purposes if 'the police officer [can] point to specific and articulable facts' which lead him to reasonably conclude 'that criminal activity may be afoot.'" *Ward v. Commonwealth*, 568 S.W.3d 824, 829 (Ky. 2019) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). To determine whether an investigatory stop is justified, the articulable and reasonable suspicion of criminal activity must be gleaned from the

totality of circumstances. *Bauder v. Commonwealth*, 299 S.W.3d 588, 590-91 (Ky. 2009).

Considering the totality of circumstances of this case, we conclude there existed an articulable and reasonable suspicion of criminal activity to justify the brief stop of Neal's motor vehicle. The stop of Neal's vehicle took place within minutes of the Speedway's robbery and in close proximity to the Speedway store. It was late at night, and the officer first encountered Neal's vehicle on a service road. Moreover, the officer was aware that the suspect had fled on foot, so it was likely that the suspect would still be in the area. Taken together, the officer possessed articulable and reasonable suspicion of criminal activity to initiate an investigatory stop of Neal's vehicle. As the stop of Neal's vehicle was legally permissible, we conclude that trial counsel was not deficient for failing to file a motion to suppress. Likewise, given that Neal's argument is refuted on its face by the record in this case, there was no necessity for an evidentiary hearing.

Neal next asserts that trial counsel was ineffective for failing to object to incorrect and misleading statements regarding good-time credit made by a witness for the Commonwealth and by the prosecutor during the penalty phase closing argument. Neal specifically maintains that the Commonwealth's witness, Officer Michele Butts,[4] and the prosecutor in closing argument made inaccurate

---

[4] Michele Butts was a probation and parole officer.

and misleading statements concerning good-time credit and that trial counsel was deficient for failing to object to same:

> As extensive and thorough as Officer Butts' testimony regarding good time credits appeared, it was incorrect in several important ways. One of the most significant is her testimony that good time credit was "granted under statute." Another mischaracterization involved statutory and meritorious good time being automatically given to all prisoners. In addition, the version of [Kentucky Revised Statutes] KRS 197.045 in effect at the time of Mr. Neal's sentencing did not award ninety days of good time credit for completing mere "college credits."

> . . . .

> During penalty phase closing argument the prosecutor made numerous and extensive references to the "good time credits" to be applied against Mr. Neal's sentence. As proof of this, she relied partially on the testimony given by Officer Butts. The prosecutor also relied on assumptions and assertions concerning good time credit that weren't included in Officer Butts' testimony specifically or introduced into evidence generally.

> [The prosecutor] emphasized that prisoners could get a lot of credits and told the jury that Mr. Neal "could 'hypothetically' get one hundred and twenty (120) days statutorily and eighty[-]four (84) days meritorious."

> After explaining how she had done some "simple math" the prosecutor told the jury that Mr. Neal could receive more than three hundred (300) days of credit for *every three hundred and sixty five (365) day year he was in prison*. This was not testified to by Officer Butts.

> After returning the jury's attention the power point slides, which were described as showing the jury "how those credits work;" the prosecutor reminded everyone that Mr. Neal would also receive three months of educational credit "every time he does some certificate."
>
> . . .

Neal's Brief at 18, 20-21 (citations and footnote omitted). Neal argues that had trial counsel objected to the incorrect and misleading comments concerning his entitlement to good-time credit, such information would have been excluded, and he would have received a shorter sentence of imprisonment. Neal claims that the jury's recommended sentence of seventeen and one-half years' imprisonment directly arose from the inaccurate information and inflated calculation of good-time credit presented by the Commonwealth.

As to evidence concerning good-time credit, our Supreme Court has recognized that "[t]he use of incorrect, or false, testimony by the prosecution is a violation of due process when the testimony is material." *Robinson v. Commonwealth*, 181 S.W.3d 30, 38 (Ky. 2008). Additionally, "the test for materiality is whether 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Robinson*, 181 S.W.3d at 38 (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

At the penalty phase of trial, the jury heard evidence that Neal's minimum sentence of imprisonment was ten years and maximum sentence of imprisonment was twenty years, if he were found to be a first-degree persistent

-10-

felony offender. Also, the jury was properly informed that any credits, excluding jail-time credit, would only be triggered after Neal served a minimum of ten years. While some of the Commonwealth's comments concerning credits were misleading and trial counsel should have objected thereto, we are unable to conclude that absent such error by trial counsel, the result of the proceeding would have been different. Accordingly, we are of the opinion that the circuit court properly denied Neal's RCr 11.42 motion.

For the foregoing reasons, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David L. Stewart
Assistant Public Advocate
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky